BEFORE THE SECOND DIVISION, OCTOBER 28, 1965

No. 69606.—Concord Craftsmen, Inc. *v.* United States, protest 64/10902 (Boston).

RAO, Chief Judge: This case involves the proper tariff classification of certain plastic mailbox covers which had been assessed with duty at the rate of 20 per centum ad valorem, by similitude to manufactures, wholly or in chief value of cotton, as provided, respectively, in paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, and in paragraph 923 of said act, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877.

Plaintiff disclaims similitude of the imported articles to any manufacture wholly or in chief value of cotton, and claims, alternatively, that said articles are properly dutiable at the rate of 10 per centum ad valorem, as nonenumerated manufactured articles, as provided in paragraph 1558 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 347, T.D. 52827; or at the rate of 12½ per centum ad valorem, by similitude to manufactures wholly or in chief value of india rubber or gutta-percha, in paragraph 1537(b) of said act, as modified by said Japanese protocol, as supplemented; or at the rate of 15½ per centum ad valorem, by similitude to manufactures wholly or in chief value of flax or jute, as provided in paragraph 1023 of said act, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, supplemented by Presidential Proclamation No. 3479, 97 Treas. Dec. 430, T.D. 55649; or at the rate of 18 per centum ad valorem, by similitude to other manufactures of vegetable fiber, except cotton, in said paragraph 1023, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement of Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

The respective tariff provisions here involved are couched in the following language:

Paragraph 1559, as amended, *supra:*

(a) Each and every imported article, not enumerated in this Act, which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall

be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 923, as modified by T.D. 53865, *supra:*

All manufactures, wholly or in chief value of cotton, not specially provided for:
* &ast; &ast; &ast; &ast; &ast; &ast;
    Other (except * * *) _____ 20% ad val.

Paragraph 1558, as modified by T.D. 52739, *supra:*

Articles manufactured, in whole or in part, not specially provided for (except the following: * * *) _____ 10% ad val.

Paragraph 1537(b), as modified by T.D. 53865, *supra:*

Manufactures of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value, not specially provided for (except * * *):
* &ast; &ast; &ast; &ast; &ast; &ast;
    Other_____ 12½% ad val.

Paragraph 1023, as modified by T.D. 55615, *supra:*

Manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for:
    Wholly or in chief value of flax [or jute]_____ 15½% ad val.

Paragraph 1023, as modified by T.D. 54108, *supra:*

All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for:
    Manufactures wholly or in chief value of flax or jute _____ 18% ad val.

At the trial of this action, a sample of the imported merchandise was received in evidence as plaintiff's exhibit 1. The record establishes that this is an article, composed of polyvinyl and a silk screen, which is all plastic except for a cardboard insert, metal grommets, and a cord. It is a decorative item for use during the Christmas season which is designed to completely cover a rural mailbox.

There was also introduced into evidence as plaintiff's exhibit 2, a communication, dated May 17, 1963, from the Deputy Commissioner of Customs to the plaintiff, wherein the following statement appears:

* * * Apparently, covers serving the same purpose would most likely be made of a fabric material such as canvas made from cotton.

Plaintiff called as its first witnes Mr. John E. Sullivan, the United States customs examiner at the port of Boston, who made the advisory classification of the subject merchandise by similitude to manufactures of cotton. Mr. Sullivan stated that he had never seen a mailbox cover such as is here involved made of rubber or of cotton. In fact, he had never previously seen any article of this type.

Plaintiff's second witness was Mr. Harold S. Miller, president of the corporation, which is engaged in the business of importing novelties and sundries for distribution solely in the mail-order field. It appears from the testimony of this witness that a buyer for one of the mail-order companies to which plaintiff sells mentioned that he had seen an article in Chicago which he thought might prove to be a good mail-order item. From the rough idea which this person provided, a design was prepared and sent to Japan for production and subsequent importation.

Mr. Miller stated that the mailbox covers were made of a plastic substance since its intended outdoor use and consequent exposure to the elements required a waterproof fabric and because it was the cheapest material available. He further testified that he had never seen a mailbox cover made of cotton or canvas or rubber. However, he admitted on cross-examination that he did not know whether or not cotton mailbox covers are sold commercially.

Prior to importation, Mr. Miller investigated mail-order and catalog houses to determine whether or not there would be a market for this product but not to ascertain if any similar articles were available. However, after being apprised of the fact that duty would be assessed at the 20 per centum rate, he tried to find out whether any cotton or other type of mailbox cover was being sold by inquiring at Sears Roebuck. It was his impression that those with whom he spoke were totally unaware of such an item. He also communicated with the Bureau of Customs for information as to the existence of a cotton or canvas mailbox cover and received the letter which is in evidence as plaintiff's exhibit 2 in reply.

It is the contention of the plaintiff that, since it has been established that neither the examiner nor the Bureau of Customs had information as to the actual existence of a mailbox cover made of cotton and since it further appears that cotton is not a suitable substance for use in a cover which must be exposed to the elements, a *prima facie* case negativing the existence of any similar articles had been made out, and the burden of going forward with evidence to support the collector's classification shifted to the Government. It is alternatively urged that the texture of the imported article, as indicated by the sample in evidence, more closely resembles rubber than cotton, and, therefore, if the court is satisfied that there was a preexisting article of a similar nature, made of rubber, classification in paragraph 1537(b), as modified, *supra*, by similitude, is warranted.

Counsel for the Government rests upon the proposition that the evidence in the instant case is insufficient to rebut the presumption of correctness which adheres to the collector's classification of imported merchandise.

Under settled principles of law, the collector's action in classifying the subject articles by similitude to manufactures of cotton presupposes that they are not dutiable directly under any of the express enumerations in the dutiable schedule of the Tariff Act of 1930 and/or as amended or modified. *Salentine & Company, Inc.* v. *United States*, 46 Cust. Ct. 357, Abstract 65216; *Castelazo & Associates and Surgident, Ltd.* v. *United States*, 47 Cust. Ct. 365, Abstract 66211; *Zenith Novelty Co. et al.* v. *United States*, 49 Cust. Ct. 215, Abstract 67011. It is also fundamental in customs jurisprudence that the collector's classification is presumptively correct and that he has found every fact to exist which was essential to his decision. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75; *United States* v. *Marshall Field & Co.*, 17 CCPA 1, T.D. 43309; *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798; and the burden rests with the party challenging such classification to show not only that the collector's action was erroneous, but to establish the correctness of the claimed classification. *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325; *United States* v. *Victoria Gin Co., Inc., et al.*, 48 CCPA 33, C.A.D. 759; *Atlantic Aluminum & Metal Distributors, Inc.* v. *United States*, 47 CCPA 88, C.A.D. 735.

In shouldering the burden of making out a *prima facie* case against the collector's classification of imported merchandise, a plaintiff is initially faced with the proposition that it is the decision of the collector, not that of the Bureau of Customs nor of the appraising official, to which the proof must be addressed,

since it is the collector who is the classifying officer. As stated in the case of *Humphrey & MacGregor* v. *United States*, 24 Cust. Ct. 415, Abstract 54191:

It is too elementary to require extended discussion that the collector of customs is the classifying officer and is under no obligation to accept the advisory return of the appraiser. The collector is at liberty to make such investigation as he deems proper to ascertain all the facts necessary to enable him to determine the proper classification of imported merchandise under the provisions of the statutes. See *National Hat Pin Co.* v. *United States*, 5 Ct. Cust. Appls. 435, T.D. 34971, and *Oakland Food Products Co. et al.* v. *United States*, 32 C.C.P.A. (Customs) 28, C.A.D. 281.

Accordingly, in the present instance, it is immaterial that neither the examiner, nor, seemingly, the Deputy Commissioner of Customs, had any knowledge of the existence of a mailbox cover, wholly or in chief value of cotton, to which the article at bar is similar. It is presumed from the collector's classification that there was in fact such an article, and it was incumbent upon the plaintiff either to negative the existence of a cotton mailbox cover or to show an absence of similarity between the two articles.

The court is constrained to hold that the record before it is insufficient for either of these purposes. Simply because the witnesses for the plaintiff, and, apparently, the employees of Sears Roebuck had never seen a mailbox cover, is scarcely adequate to show that no such article existed, and, standing alone, possesses little probative value. Not only is this testimony not further substantiated, but plaintiff's own proof tends to suggest the contrary, for it is clear that, prior to the importation of the subject merchandise, an existing article of apparently similar nature was described to plaintiff's president. Nevertheless, there is not a scintilla of evidence to disclose of what material that item was composed nor to indicate whether or not the two articles were suitable for similar uses. The fact that a mailbox cover made of plastic is more desirable for outdoor use, than one composed of cotton, because it is waterproof and can better withstand the elements, is an irrelevant consideration, if the plastic article is capable of performing substantially the same function as the cotton article (*Jomac-North, Inc.* v. *United States*, 48 Cust. Ct. 119, C.D. 2321), and the instant record lacks convincing proof that this is not the case.

Since plaintiff's alternative claims are dependent upon an initial showing that similitude to an article composed wholly or in chief value of cotton does not exist, and since by reason of the foregoing discussion it is clear that plaintiff has not succeeded in that endeavor, all claims in the protest must be overruled.

Judgment will be entered accordingly.