(C.D. 2856)

DEVON TAPE CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 20, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise here under consideration consists of rolls of black tape invoiced as "Black Polythene Electrical Tape Devoseal Ind. Tins." It was classified, pursuant to the provisions of paragraph 1559 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1954, 68 Stat. 1137 (19 U.S.C. § 1001, paragraph 1559(a)), by similitude to manufactures of cotton, not specially provided for, under paragraph 923 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, and, accordingly, assessed with duty at the rate of 20 per centum ad valorem.

Plaintiff claims that said tape should be classified, pursuant to the provisions of said paragraph 1559(a), by similitude to insulating materials, composed wholly or in chief value of rubber, in accordance with the provisions of paragraph 1537(b) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to

the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 12½ per centum ad valorem. In the alternative, plaintiff claims that this tape should be classified as a nonenumerated manufactured article, not specially provided for, within the provisions of paragraph 1558 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as supplemented by Presidential notification, 86 Treas. Dec. 347, T.D. 52827, and dutiable at the rate of 10 per centum ad valorem.

Alternative claims of the plaintiff for classification of the subject merchandise within the provisions of paragraphs 31(a)(2) and 41 of the Tariff Act of 1930, as modified, were not pressed at the time of trial. Accordingly, these claims are overruled.

The pertinent portions of the above-mentioned statutory provisions read as follows:

Paragraph 1559 of the Tariff Act of 1930, as amended, *supra:*

(a) Each and every imported article, not enumerated in this act, which is similar in the use to which it may be applied to any article enumerated in this act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 923 of the Tariff Act of 1930, as modified, *supra:*

All manufactures, wholly or in chief value of cotton,
not specially provided for:
    Other _____ 20% ad val.

Paragraph 1537(b) of the Tariff Act of 1930, as modified, *supra:*

Molded insulators and insulating materials, wholly or
partly manufactured, composed wholly or in chief
value of rubber or gutta-percha_____ 12½% ad val.

Paragraph 1558 of the Tariff Act of 1930, as modified, *supra:*

Articles manufactured, in whole or in part, not spe-
cially provided for * * *_____ 10% ad val.

Three witnesses testified on behalf of the plaintiff. Mr. Fred Devan, plaintiff's vice president in charge of sales, stated that he sold the instant tape and other tapes throughout the United States in volumes in excess of one million dollars per year and was familiar with the instant tape by virtue of knowledge gained from sales, analyses by testing laboratories, discussions with testing engineers, electrical engineers, and chemists. The imported tape, according to the witness, is

a "thermoplastic electrical insulating tape," that is to say, a tape made entirely of synthetic material possessing characteristics of high dielectric strength, or resistance to disintegration by electric voltage, together with desirable attributes of flexibility and conformability. The witness stated that said tape is offered to the trade as a type of thermoplastic electrical insulating tape and sold as such to electronic wholesalers, electrical supply wholesalers, industrial supply wholesalers, and the United States Government. A military specification (MIL-I-0015126E (SHIPS)) dated May 29, 1959, was introduced in evidence as plaintiff's exhibit 2, showing that the instant tape was one of the tapes specified thereon for use as electrical insulating tape.

In response to questions by the court, the witness stated that the instant tape differed from so-called cotton adhesive tape in many respects. The cotton tape is specifically designed to adhere to human skin without harmful effects, has a low dielectric strength rendering it unsuitable for electrical insulation, has poor resistance to oils, chemicals, and moisture, and poor conformability. The witness testified that, when rubber electrical insulating tape is used, cotton tape is employed to secure the rubber tape and provide mechanical protection for it against abrasion. In effect, then, the instant tape replaces the combination of rubber insulating tape and cotton friction tape.

The second witness for plaintiff was Mr. Henry Parrondo, a test engineer for Electrical Testing Laboratories, Inc., an independent laboratory specializing in testing articles used in the electrical trade. Mr. Parrondo testified that, at the behest of the plaintiff, he conducted a dielectric voltage test on samples of the thermoplastic tape in question, introduced in evidence as plaintiff's exhibit 3; on samples of rubber insulation tape, introduced in evidence as plaintiff's illustrative exhibit 4; and on samples of cotton friction tape, introduced in evidence as plaintiff's illustrative exhibit 5. The dielectric voltage test measures the ability of a tape to resist puncture by the electrical arc, a higher voltage reading indicating relatively superior insulating qualities. Ten specimens of each tape were tested. The thermoplastic tape and the rubber tape averaged 16.7 and 16.5 kilovolts, respectively, while the cotton tape averaged 1.9 kilovolts; thus indicating the similar insulation characteristics of the thermoplastic tape and the rubber tape. The laboratory work sheet containing the results of the above tests was offered in evidence as plaintiff's exhibit 6.

The third witness for the plaintiff was Mr. Paul Heinrich, a licensed electrician in the New York area. Mr. Heinrich stated that as a master electrician he is qualified to supervise the installation, repair, and alteration of electrical work in New York City, including the selection of all proper materials; that, inasmuch as the electrical work

undertaken in New York is unusually diverse and is conducted according to a code which serves as a model for the rest of the country, he is capable of testifying as to the usages of the electrical trade. According to the witness, who has been familiar with thermoplastic tapes for about 15 years, the instant tape is used for insulating exposed current-carrying electrical wires and attachment splices and has substantially replaced the rubber tape previously used for that purpose in the electrical trade. When rubber tape is used in electrical splices it must be secured and protected by the application of covering tape. The instant tape needs no such supplementary aid. It is also superior to rubber tape in the characteristics of pliability, adhesion, economy of space, and resistance to external deteriorating conditions. The instant tape's most significant characteristic, said the witness, is its electrical insulation quality.

Defendant filed the following request and statement of its position in this case:

Defendant respectfully requests that the Court relieve defendant of the filing of a brief in the above-captioned protest.

In view of the facts of record in this case, it is the position of the defendant that the imported thermoplastic tape is not dutiable by similitude of use to either manufactures of cotton, not specially provided for, under paragraph 923 of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877, as classified by the Collector, or as insulating materials composed wholly or in chief value of rubber, under paragraph 1537(b) of the same Act, as modified by T.D. 54108. The defendant concedes that classification of said merchandise under paragraph 1558 of the Tariff Act of 1930, as modified by T.D. 52827, as a nonenumerated article, as alternatively claimed by plaintiffs, would be proper.

In light of the clear and persuasive thrust of the testimony we accept defendant's concession that the instant tape is not classifiable by similitude to manufactures of cotton, not specially provided for, and was, thus, improperly classified upon importation. The testimony plainly reveals that the uses of the instant tape and cotton tape are dissimilar.

We do not, however, accept as controlling, defendant's position that the instant tape is also not properly classifiable by similitude to insulating materials composed wholly or in chief value of rubber. We are of the opinion that, by virtue of the testimony summarized above, plaintiff has successfully demonstrated that the tape in question is used in a manner similar to the use of rubber insulating tape and, consequently, is classifiable by similitude to insulating materials composed wholly or in chief value of rubber. Plaintiff has proven both the similarity of use and the scientific and practical reasons for

it. The testimony reveals that the predominant characteristic of the instant tape is its resistance to electric breakdown, in which characteristic it is, at least, equal to rubber tape. The testimony further reveals that the instant tape is in use in electrical applications throughout the United States and is supplanting rubber tape in the regard of the electrical trade. In addition, this tape possesses characteristics of flexibility, conformability, adhesion, and resistance to deterioration which make it more desirable for electrical applications than rubber tape.

The evident superiority of the imported tape to the enumerated article does not affect classification by similitude. The controlling factor is similarity of use. *United States* v. *Steinberg Bros., Steinberg Bros.* v. *United States*, 47 CCPA 47, C.A.D. 727. Thus, for example, plastic mailbox covers which were used for the same purpose as covers made of enumerated cotton were held to be properly classifiable by similitude thereto, although the plastic covers were superior in a number of respects. *Concord Craftsmen, Inc.* v. *United States*, 55 Cust. Ct. 469, Abstract 69606. Similarly, vinyl plastic containers which were used for the same purpose as enumerated metal containers and plastic foam X-ray positioning blocks which were used for the same purpose as X-ray blocks made of enumerated rubber were held to be properly classified by similitude, although they were superior to the enumerated articles in certain respects. *Hi Test Twist Drill Works, Inc., et al.* v. *United States*, 50 Cust. Ct. 265, Abstract 67602. *Rubber Fabrics Co.* v. *United States*, 48 Cust. Ct. 422, Abstract 66695. See also, *Jomac-North, Inc.* v. *United States*, 48 Cust. Ct. 119, C.D. 2321.

In view of our conclusion that the instant tape is properly dutiable by similitude to insulating materials composed wholly or in chief value of rubber, defendant's additional concession that the instant tape is classifiable as a nonenumerated article is without effect. It is settled law that the provisions of paragraph 1558, for nonenumerated articles, may not be reached if merchandise is otherwise classifiable, directly or by similitude. *Isler & Guye* v. *United States*, 11 Ct. Cust. Appls. 340, T.D. 39146.

In light of the above considerations, we find that the imported tape is used, like rubber tape, for the purpose of electrical insulation and is, therefore, properly classifiable by similitude to insulating materials composed wholly or in chief value of rubber. The same considerations lead us to dismiss plantiff's alternative claim that the instant tape is a nonenumerated manufactured article. The claim in the protest is sustained to the extent indicated. All other claims are overruled.

Judgment will be entered accordingly.