(C.D. 2113)

DWECK LINEN IMPORTING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 8, 1959)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

RAO, Judge: These cases, which were consolidated for purposes of trial, relate to several importations of printed tablecloths, which were assessed with duty at the rate of 30 per centum ad valorem, pursuant to the provisions of paragraph 923 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 357, T.D. 52836, for manufactures, wholly or in chief value of cotton.

Plaintiff herein alleges that said merchandise is more specifically provided for in paragraph 910 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as articles, made or cut from table damask, wholly or in chief value of cotton, valued at 75 cents or more per pound, and, hence, is properly dutiable at the rate of 22½ cents per pound, but not less than 17½ per centum nor more than 30 per centum ad valorem.

A sample of the imported merchandise is in evidence as plaintiff's exhibit 1. It is concededly a tablecloth, composed of cotton and rayon yarns, which is in chief value of cotton. The evidence shows that the tablecloths in issue were woven on a jacquard loom and that the finished fabric was thereafter taken to a separate mill, where a crude map of the State of Florida was printed in various colors on the surface.

The three witnesses for the plaintiff, all of whom were engaged in the business of importing and selling tablecloths, napkins, towels, embroidered articles, and other similar textile fabrics of damask and other weaves, since the early 1920's, were of the opinion that the merchandise at bar consisted of cotton damask tablecloths. They were in general agreement that damask was a particular kind of weave made only on a jacquard loom, which, whether plain or figured with flowers or other patterns, is woven in such a way as to reflect the light and thus have a "shiny" or "silky" appearance. It further appears from the testimony of the owner of plaintiff company that the instant cloths were ordered as damask cloths, printed, and sold as printed tablecloths of a jacquard weave.

The only witness for the defendant has been, for the past 13 years, in charge of production scheduling, in connection with the finishing and merchandising of damask, for the J. W. Ballantine Co. of New York City, a firm engaged in the sale of both cotton and rayon textiles. He has seen damask made many times and has personally sold it. He defined damask as follows:

Damask is of necessity a fabric made on a Jacquard loom. It doesn't necessarily have to be of any particular fiber but it is made of a completely woven pattern cloth. The pattern itself is or can be a five-shaft satin on one side,

made up on a warp yarn and reversing the fabric, you will find the pattern made on the other side made of a five-shaft filling satin.

This witness was of opinion that plaintiff's exhibit 1 was not damask. He described it as a "3-leaf twill of a cotton warp and rayon filling," which does not have a woven design in the cloth itself. By way of contrast, he produced a tablecloth, marked exhibit A, which he stated was a cotton damask cloth, for the reason that it has a woven pattern in the cloth, which is completely reversible.

Counsel for the plaintiff predicates its claim for recovery herein upon an alleged preponderance of evidence establishing that the subject cloths are cotton damask. This position, we must assume, presupposes that the issue to be decided here is one of fact calling for the weighing of proofs adduced by the respective parties. If that be the theory upon which this case was presented to us, it would appear to ignore certain fundamental precepts of customs jurisprudence.

What we are required to determine in this case is whether the subject merchandise consists of articles, made or cut from table damask, wholly or in chief value of cotton. And since it has been conceded that the articles at bar are tablecloths, which are in chief value of cotton, the ultimate question is really whether or not they are of damask.

Before an answer to that question may be provided, there must first be considered what the term "damask" means. It is by now well established that, in the absence of commercial designation, which is not contended for here, words used in a tariff statute are to be given their common meanings. *Armand Schwab & Co., Inc.* v. *United States*, 32 C.C.P.A. (Customs) 129, C.A.D. 296. It rests with the court, as matter of law, to ascertain such meanings, and, in reaching any conclusion thereon, the court may draw upon its own judicial knowledge, or consult any relevant authority which may be of assistance to it. *Nix* v. *Hedden*, 149 U.S. 304; *United States* v. *Florea & Co., Inc.*, 25 C.C.P.A. (Customs) 292, T.D. 49396. The court may also consider the evidence of witnesses upon the point, but such testimony is advisory only, and without binding effect. *United States* v. *Flory & Co.*, 15 Ct. Cust. Appls. 156, T.D. 42219; *United States* v. *John B. Stetson Co.*, 21 C.C.P.A. (Customs) 3, T.D. 46319; *Stephen Rug Mills* v. *United States*, 32 C.C.P.A. (Customs) 110, C.A.D. 293; *Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C.C.P.A. (Customs) 24, C.A.D. 209; *United States* v. *O. Brager-Larsen*, 36 CCPA. (Customs) 1, C.A.D. 388. Accordingly, to assert that the preponderance of evidence establishes that certain cotton cloth is damask, is to place undue emphasis upon matter which the court is privileged to disregard in its entirety.

In the language of the lexicons, "damask" is defined as follows:

A reversible figured fabric of linen, silk, wool, or other material, one side having a satin pattern on a background of plain weave, the other side a pattern in plain weave on a satin ground. [Webster's New International Dictionary, 1956.]

A reversible figured fabric of linen, silk, wool, etc., esp. a linen fabric of this kind used for tablecloths. [Webster's New Collegiate Dictionary, 1951.]

A rich silk fabric woven in elaborate patterns having a raised appearance. A fine twilled table-linen, so woven that two sets of parallel threads on the surface give the pattern different aspects from different points of view. A many-colored Syrian silk fabric with raised designs. [Funk & Wagnalls New Standard Dictionary, 1952.]

The respective sessions of Congress which employed the word "damask" in the Tariff Acts of 1922 and 1930, had before them, at the time of the enactment of those statutes, the following descriptions:

[From the Summary of Tariff Information, 1921.]

Damask fabrics are usually woven on Jacquard looms, although some varieties are made on dobby looms, and show ornamental patterns, usually elaborate in character, such as fruit, foliage, scrolls, and vases. The figures in the patterns are made by alternately exchanging warp for filling surface and vice versa. The surface threads of the figures lie at right angles to the surface threads of the background, and the rays of light falling on the fabric are dispersed and the pattern is brought out in bold relief, even though the entire fabric be white. * * *

[From the Summary of Tariff Information, 1929.]

Damask is a woven-figured fabric distinguished by the appearance of the design on the smooth surface without the necessity of any contrast in colors. Warp sateen is usually employed for the figures and filler sateen for the ground. The surface threads in the figures lie at right angles to those in the ground, with the result that light falling on the smooth surface is refracted when it strikes the figures and the pattern is caused to stand out in bold relief. * * *

It is our understanding from the foregoing definitions that the distinguishing features of damask are the presence of a pattern or figure woven into the fabric, reversibility of the patterns, and the quality of presenting different aspects from different points of view.

An examination of the fabric at bar, in the light of this understanding, reveals that it does not respond to any of these particulars. Since in point of fact it does not possess any configuration or pattern woven into the body of the fabric, considerations of whether the patterns are reversible, or different aspects appear from different angles, are, of course, superfluous.

Neither did any of the witnesses for the plaintiff assume to say that the instant cloth possessed any design. Rather did they take the position that design was immaterial if the fabric was a jacquard weave, or reflected the light, or was silky or shiny in appearance. In this respect, their testimony is so completely at variance with the characteristic attributes of damask cloth as to be absolutely valueless.

On the other hand, the witness for the defendant, who was shown to have had experience in both the manufacture and the sale of damask fabrics, based his opinion that the fabric in the tablecloths at bar was not damask, upon the fact, considered by us to be essential, that it did not have a woven design in the cloth itself.

We share that view, and for that reason are constrained to hold that the subject tablecloths are not made or cut from table damask within the contemplation of paragraph 910, as modified, *supra*. All claims in the protests before us are, therefore, overruled.

Judgment will be entered accordingly.