**INTERNATIONAL SELLING CORP.**

v.

**UNITED STATES.**

**C.D. 3669; Protest Nos. 66/47484–00765–66, etc.**

United States Customs Court,
Third Division.

Jan. 15, 1969.

Sharretts, Paley, Carter & Blauvelt, New York City (Joseph F. Donohue, New York City, of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge:

Plaintiff has filed protests in these four cases, consolidated for trial, involving merchandise imported from France into the port of New York. The merchandise was described in the official entry papers as activated alumina and was shipped in the form of tiny balls ranging in diameter from 2 to 5 millimeters. The parties agree that the activated alumina was imported for sale and use as a desiccant or drying agent for liquids and gases.

Customs officials at New York classified the alumina in TSUS schedule 5, part 1, subpart K as a mineral substance or an article of mineral substances, not specially provided for, not decorated, dutiable at 15 per centum ad valorem under item 523.91. Plaintiff claims that activated alumina should be classified in TSUS schedule 4, part 2,

subpart C as an aluminum compound, namely alumina, dutiable at 0.25 cent per pound under item 417.12. The compet-ing classifications, in the TSUS context, are as follows:

Assessed:

Schedule 5—Part 1.

Subpart K.—Nonmetallic Minerals and Products Not Specially Provided For

\*  \*  \*  \*  \*  \*  \*

Mineral substances, and articles of mineral substances, not specially provided for:

523.81  Mineral substances, crude ....... \* \* \*

Other:

523.91  Not decorated ......................15% ad val.

Claimed: Schedule 4—Part 2.

Subpart C.—Inorganic Chemical Compounds

\*  \*  \*  \*  \*  \*  \*

Aluminum compounds:

\*  \*  \*  \*  \*  \*  \*

417.12  Hydroxide and oxide (alumina)[1] ...........0.25¢ per lb.

\*  \*  \*  \*  \*  \*  \*

———————◆———————

Schedule 4, part 2, of the TSUS is essentially the "basket" part of the schedule and includes all the important inorganic and organic chemicals itemized separately which are not specially provided for elsewhere in the schedule. "Appropriate headnotes indicate the proper category for such chemicals which might be subject to dual classification." (Tariff Classification Study, 1960, Schedule 4, page 55.) Subpart K of schedule 5, part 1, contains the basket provision for mineral substances and articles of mineral substances. "But, as set forth in the headnote, \* \* \* [subpart K] does not include mineral substances which are provided for in schedule 4 \* \* \* except part 2 thereof, or which are sufficiently pure to be regarded as elements or compounds falling within the said part 2 \* \* \*." (Tariff Classification Study, 1960, Schedule 5, page 38.)

The headnotes referred to in the Classification Study are part of the substantive law of TSUS. The appropriate headnotes are as follows:

Schedule 4 headnotes:

1. This schedule does not include—

(i) any of the mineral products provided for in schedule 5;

\*  \*  \*  \*  \*  \*

[Schedule 4] Part 2 headnotes:

1. This part covers chemicals, except those provided for elsewhere in this schedule and those specially provided for in any of the other schedules.

\*  \*  \*  \*  \*  \*

[Schedule 5—Part 1.] Subpart K headnote:

1. This subpart covers mineral substances and articles of mineral substanc-

———

[1]. The duties on aluminum oxide (alumina) imported for use in producing aluminum are suspended. See Appendix to Tariff Schedules.

es, not provided for elsewhere in the schedules, but does not include:

> (i) chemical elements or chemical compounds in part 2 of schedule 4, or mineral substances provided for in other parts of schedule 4; * * *

■ We read the above headnotes to mean that in the case of merchandise which might be subject to dual classification under schedule 5 or schedule 4, schedule 5 must be given preference except in the instance of those mineral substances under subpart K thereof, which are chemical elements or chemical compounds provided for in part 2 of schedule 4, or mineral substances provided for in other parts of schedule 4. What this means in terms of the disputed classification here is that item 417.12 is relatively more specific than item 523.91 as to merchandise subject to dual classification under either. As we shall discuss, we are of the opinion and hold that the activated alumina of these protests is properly dutiable under TSUS item 417.12, as plaintiff claims.

On trial, three witnesses testified for plaintiff. One witness testified for defendant. The commercial invoice, purchase order, and acknowledgement of the purchase order filed with the official customs entry papers in each protest, along with the customs laboratory reports attached to the entry papers in protests 66/47484 and 66/56098 are in evidence. (R. 3.) A representative sample of the imported activated alumina is of record, exhibit 1, as is a page from the brochure of Aluminum Company of America advertising "Alcoa Activated Aluminas and alumina gels—either granular or ball form" for desiccating jobs. Exhibit 2. The material facts which are not in dispute can be briefly summarized.

The imported activated alumina in these protests was processed from bauxite by Pechiney-Saint-Gobain, a French firm. Bauxite is an impure aluminum oxide containing an indeterminate quantity of water molecules and other impurities. To start the process, the bauxite is crushed into a fine powder and heated with a mixture of caustic soda to form a slurry. The slurry is next reheated in an apparatus called a digestor to form a solution of almost pure aluminum oxide. The impurities, which do not go into solution and remain as solids, are removed from the liquid. It, the liquid, is cooled and, as it cools, the aluminum oxide separates or precipitates in a crystalline form known as aluminum oxide trihydrate. The trihydrate is then washed, dried, and passed through an oven, heated to about 1,500 degrees Fahrenheit, for a period of one-half to one second. That amount of heat drives off almost all the water of hydration bound to the aluminum oxide. What results is hydrated aluminum oxide in the form of a fine powder containing approximately one-half molecule of water with a tendency to self-agglomerate. The tendency to self-agglomerate is utilized to form the powder into little balls, which is done by rotating the powder in a pan pitched to a 45 or 50 degree angle. As they form and reach various sizes, the balls fall through the bottom of the pan. Trihydrate aluminum oxide, heated to drive off all water results in an end product called corundum, a product completely anhydrous or free of water. Chemically the terms alumina and aluminum oxide are used interchangeably to describe the whole family of aluminum oxide, whether hydrated or anhydrous. Commercially, activated alumina in the ball form offers some advantages over activated alumina in the self-agglomerated granular form when used as a drying agent.

We thus come down to the fact that this activated alumina is aluminum oxide. Defendant concedes it is a form of aluminum oxide. While the ball form of alumina offers some advantages over the granular form of activated alumina as a drying agent, defendant's witness admitted that activated alumina is a form of aluminum oxide. (R. 78.) The term activated signifies that the surface of the alumina is such that moisture or water vapor can adhere to it. (R. 29.)

Defendant's main point is that this imported activated alumina is more than aluminum oxide (alumina), provided for *eo nomine* in item 417.12, because it is designed and processed to perform a specific drying agent function. Defendant would, in its own words, limit item 417.12 to "aluminum oxide as an intermediate material, and as not encompassing an article of 'predetermined characteristics' ready for its final and ultimate use." (Defendant's brief at page 20.) We agree with plaintiff that there is no such limitation in the law. Nor, in our opinion, do the historical and judicial precedents defendant cites, which we next take up, support its position.

There is little question that in drafting TSUS item 417.12 the tariff commission used the terms hydroxide or oxide (alumina), in lieu of the existing terms aluminum hydroxide or refined bauxite in paragraph 6 of the 1930 Tariff Act, because it was thought preferable to use "chemical terminology" for describing those compounds. (Tariff Classification Study, 1960, Schedule 4, page 57.) And undoubtedly the tariff commission was familiar with the statement in the Summaries of Tariff Information, 1948, volume 1, part 1, at page 138, where speaking of paragraph 6, the summary states that it:

* * * covers both aluminum hydroxide and aluminum oxide; the latter product is also known as alumina. As originally produced aluminum hydroxide is a wet colorless gelatinous substance obtained by precipitation from the solution of sodium aluminate that is produced when bauxite, an ore containing crude hydrated alumina, is digested with caustic soda under pressure. This form of the hydroxide has entered trade only in recent years. *The aluminum hydroxide [A1 (OH)₃] that has been more usually offered in trade is a white powder or lumpy material that is sold in two grades— heavy and light. The heavy grade, known as heavy alumina hydrate or alumina trihydrate (Al₂O₃3H₂O), con-*

*tains 60 to 65 percent aluminum oxide and is substantially a pure material.* The light grade or light aluminum hydrate contains 45 to 50 percent alumina and is a mixture of aluminum hydroxide and basic aluminum sulfate. It is produced by drying the precipitate that forms when caustic soda or soda ash is added to a solution of aluminum sulfate. Aluminum oxide or alumina, which has been held by a decision of the United States Court of Customs and Patent Appeals to be properly classifiable as refined bauxite, is the white product that is obtained when heavy aluminum hydroxide is heated to drive off all its combined water.

[Defendant's emphasis copied from brief at page 15.]

Defendant's emphasis on how aluminum hydroxide is usually offered in the trade does not, of course, rule out that it is also offered in other forms not so usual. We note the 1948 Summary statement that aluminum oxide or alumina is the white product that is obtained when heavy aluminum hydroxide is heated to drive off all its combined water. On this record, the product that results when all water is driven off trihydrate aluminum oxide is corundum. Defendant reasons that TSUS item 417.12 cannot be that all invasive of all forms of aluminum oxide, since Congress specifically provided for corundum, a form of aluminum oxide, in TSUS items 519.17 and 519.37. That's the very point. Congress provided for corundum in schedule 5 and excluded corundum from schedule 4 by definitive headnote spelling out that schedule 4 does not include any of the mineral products provided for in schedule 5, except for those possibly under the basket provision in subpart K of schedule 5.

The definitive headnotes in schedules 4 and 5 are consistent with the substance of the decisions in C. J. Towers & Sons v. United States, 24 CCPA 332, T.D. 48769, and United States v. C. J. Tower & Sons, 35 CCPA 22; C.A.D. 366, cited and relied on by defendant. The com-

peting provisions in the first *Tower* case were paragraph 6 and paragraph 214 of the 1930 Tariff Act, counterparts of TSUS items 417.12 and 523.91 in this litigation. There merchandise consisting of aluminum oxide, classified as an earthy or mineral substance under paragraph 214, was claimed dutiable under paragraph 6 as refined bauxite which, to use the chemical term in item 417.12, is a form of aluminum oxide. Our appeals court reversed the decision of this court overruling the claim under paragraph 6 with the conclusion that:

> There does not seem to us to be any sound or compelling reason for holding, upon the facts shown in this record, that aluminum oxide, a form of refined bauxite, is not included along with another form, aluminum hydroxide, in paragraph 6 of the Tariff Act of 1930. Certainly "refined bauxite" is more specific than the general "earthy or mineral substances" paragraph under which the collector classified the merchandise. [24 CCPA 338.]

The second *Tower* case involved competing classifications substantially different from those here. There an article known as "aloxite", a form of refined bauxite, was held to be properly free of duty as a crude artificial abrasive under paragraph 1672, as claimed, rather than as refined bauxite under paragraph 6, as classified. Our appeals court found that the material "aloxite" was one of the long recognized crude abrasives which Congress intended to be free and held that the use classification for abrasives was relatively more specific than the *eo nomine* provision for refined bauxite.

 Were the competition here between a TSUS provision for drying agents or desiccants and alumina, we would have a factual situation square with the second *Tower* case and defendant's theory that this activated alumina has too many predetermined characteristics to be just alumina. In the absence of a tariff provision for desicants or drying agents, we are of the opinion that decision had best turn on the rule that

in the absence of an administrative practice, judicial decision, or legislative purpose to the contrary, an unqualified *eo nomine* tariff provision includes the article in all of its forms. Nootka Packing Co. et al. v. United States, 22 CCPA 464, T.D. 47464; United States v. Williams Clarke Co., a/c American Agar and Chemical Co., 50 CCPA 67, C.A.D. 822. As the record shows and defendant concedes, the imported merchandise is an aluminum compound oxide. Aluminum compound oxides are provided for *eo nomine* in TSUS item 417.12 of schedule 4. The imported aluminum compound oxide has not been processed in a form provided for in any of the other TSUS schedules. Since the imported merchandise was classified under subpart K of schedule 5, which does not include the aluminum compound TSUS item 417.12 in schedule 4, the protest claim under TSUS item 417.12 is sustained.

Judgment will be entered accordingly.

RICHARDSON, J., concurs.