(C.D. 3999)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 16, 1970)

*Glad & Tuttle* (*George R. Tuttle, Jr.,* and *Robert Glenn White* of counsel) for the plaintiff.

*William D. Ruckelshaus* (*Steven R. Sosnov* and *Robert Blanc,* trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

ROSENSTEIN, Judge: The merchandise involved herein, described on the invoices as "Skeena" brand "Clam Nectar", and imported from Canada in airtight containers, was assessed with duty under TSUS item 114.50 at 17.5 per centum ad valorem as clam juice, and is claimed dutiable at 2 cents per gallon under TSUS item 166.40 as beverages, not specially provided for.

The competing provisions read as follows:

| [Classified] | Schedule 1, Part 3, Subpart E Shellfish juices in airtight containers: | |
|---|---|---|
| 114.50 | Clam juice_____ | 17.5% ad val. |
| [Claimed] | Schedule 1, Part 12, Subpart B | |

Subpart B headnote:

1. The provisions of this subpart cover only products fit for use as beverages, and do not apply to any product containing 0.5 percent or more of ethyl alcohol by volume or to any product described in subpart A of this part.

|  | * * * * * * * | |
|---|---|---|
| 166.40 | Beverages, not specially provided for _____ | 2¢ per gal. |

The importation is a mixture consisting of two parts clam juice (the liquid drawn off from steamed clams) to one part water, and salt.

The sole witness herein, president of the Canadian company which processed the subject merchandise, testified that the "natural" undiluted clam juice (which he does not export) is too bitter to drink, whereas the imported diluted juice is potable. Salt is added for flavoring. The label on the imported container describes the contents as "Skeena" brand "Clam Nectar" and bears the statement, "Natural Juice-Water and Salt added".

The issue before us is whether the merchandise at bar is, by reason of the added water and salt, something more than the "clam juice" provided for in the tariff schedules and is properly classifiable, as

plaintiff claims, under the "basket" provision for "beverages, not specially provided for".

Resolution of this issue requires determination of what Congress ment by the term "juice" in the tariff schedules. It is a basic rule that "unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them." *De Ganay* v. *Lederer*, 250 U.S. 376, 381 (1919); *Armand Schwab & Co., Inc.* v. *United States*, 32 CCPA 129, C.A.D. 296 (1945). It rests with the court, as a matter of law, to ascertain such meanings and, in reaching any conclusion therein, it may draw upon its own judicial knowledge, consult any relevant authority which may be of assistance to it, or consider the testimony, which is advisory only, of witnesses upon the point. *Dweck Linen Importing Co.* v. *United States*, 43 Cust. Ct. 111, C.D. 2113 (1959).

The term "juice" is defined in *Funk & Wagnalls New Standard Dictionary of the English Language* (1942) as—

> 1. The fluid part of vegetable or animal matter; especially, the expressible watery matter in fruits, containing usually the characteristic flavor, and (chiefly in the plural) the fluids of the body.

and in *Webster's New International Dictionary*, 2d edition, unabridged (1953) as—

> 1. The extractable fluid contents of plant cells or plant structures, consisting of water holding sugar or other substances; as the *juice* of grapes. [Emphasis copied.]
>
> 2. The fluid content of animal flesh; esp., *pl.* all the fluids in the body; also, a fluid present in cancer.
>
> 3. Any liquid extracted from a body; also, an essence.

Although "clam juice" *per se* has never been the subject of litigation, we find that the term "juice", where used in conjunction with other food products, has the same meaning for tariff purposes as that found in the lexicons.

Thus, in *Smith* v. *Rheinstrom*, 65 Fed. 984, 985, 13 CCA 261 (6th Cir. 1895), involving cherry juice concentrated to one-fifth of its natural state to which alcohol was added, Judge Taft held that the mixture was not cherry juice within the *eo nomine* provision therefor in the Tariff Act of 1890, stating that—

> The juice of vegetables or fruit is nothing but the sap obtained by expression.

He also noted that, having regard to the difference in color, weight, strength as a flavoring ingredient, and cost, it was "a different article for dutiable purposes than cherry juice."

In *United States* v. *Rich*, 176 Fed. 732, 106 CCA 278 (2nd Cir. 1910), an importation consisting of fruit juices which had some water removed by evaporation was held to be dutiable by similitude as fruit juice under paragraph 299 of the Tariff Act of 1897. The court noted that the fruit juice imported at the time of passage of that act in 1897 was the juice as it was expressed from the fruit.

Also, in *Curtice Bros. & Co.* v. *United States*,[1] 5 Treas. Dec. 719, 720, T.D. 23987—G.A. 5205 (1902), involving crushed raspberries consisting of over seven parts water to one part solid matter, and classified as fruit juice, the Board of General Appraisers stated that—

> We are satisfied that the merchandise in question can not be classified as "fruit juice," as that term would merely include the juice of the fruit obtained by expression, being nothing more or less than the sap, as held by Judge Taft in Smith v. Rheinstrom: (65 Fed Rep., 984), where he uses this language: "The juice of the fruit is nothing but the sap obtained by expression." Note, also, *In re* Mihalovitch (G.A. 4296), affirmed by the circuit court for the southern district of Ohio, and *In re* Downing (G.A. 4663), where wild cherries in alcohol, the juice of the cherries having become diffused in the alcohol, were held not to be cherry juice by similitude.

The *Dictionary of Tariff Information*, 1924, and the Summary of *Tariff Information*, 1929, published by the United States Tariff Commission, also state, at pages 116 and 1524, respectively, that—

> Cherry juice and other fruit juices are obtained by pressing or crushing the fresh fruit.

Thus, "juice", in the common understanding of the term, is the natural, undiluted fluid expressed from fruits or animal or vegetable matter.

The early publications of the Tariff Commission did not deal with clam juice as a commodity inasmuch as that article was enumerated for the first time in the Tariff Act of 1930. (Paragraph 721(b) thereof provides for "Clams, clam juice, or either in combination with other substances, packed in air tight containers".) However, in the *Summaries of Tariff Information*, 1948, prepared by the Tariff Commission in response to a resolution of the House Ways and Means Committee directing the Commission to rewrite or bring up to date the summaries of tariff information, we find the following (Volume 7, Part 2, page 145):

> The products covered by this summary consist almost entirely of canned clam chowder, and canned clam juice, broth, nectar,

---

[1] See also *United States* v. *Brunett et al.*, 53 F. 2d 219 (D.C.W.D. Mo. 1931) and *People* v. *Sinicrope*, 288 P. 61, 109 Cal. App. Rep. 757 (1930), involving the scope of the National Prohibition Act, holding that fruit juice is the fluid extracted or pressed from the fruit.

cocktail, and bouillon. Clam chowder is by far the most important in United States production. For other canned clam products see separate summaries on canned razor clams and canned clams (other than razor), under par. 721 (b).

\* \* \* \* \* \* \*

*The other clam products (juice, broth, etc.) are prepared from the clam juice collected when shucking fresh clams or cooking clams for canning.* Designation of the finished products as juice, cocktail, bouillon, and the like, depends largely on whether condiments are added in processing, the types of condiments used, and the degree of concentration. The products are used as soups and as appetizers. [Emphasis supplied.]

\* \* \* \* \* \* \*

Clam chowder represents about 95 percent of the total output of these products. Most of the production is on the northeast Atlantic coast, most of the pack coming from canneries engaged in packing a wide variety of other foods, and whose clam product is almost exclusively chowder. There is, however, an appreciable production by plants engaged in canning only clams, clam chowder, and clam juice, and other fishery products.

Clam juice, nectar, etc., are packed largely by plants engaged in canning clams and by most of the plants canning clam chowder.

We find in the current series of *Summaries of Trade and Tariff Information,* also prepared by the Tariff Commission and designed to contain descriptions, in terms of the new tariff schedules, of the thousands of products imported into the United States, the following comments on the provisions for clams and clam juice in TSUS items 114.01, 114.05, 114.10 and 114.50 (Schedule 1, Volume 3, page 101 (1969)) :

Clams are used primarily as food, although substantial quantities, especially of the Pacific Coast razor clam (*Siliqua patula*), are used by fishermen as bait. When used as food, the clams are marketed fresh, chilled, or frozen either in the shell, or shucked whole, or as shucked meats (without neck, gills, and viscera); or canned—in the shell, shucked, or minced. *Clam juice is the liquid collected when shucking fresh clams or cooking clams for canning. It is used in the preparation of broth, nectar, cocktail, and bouillon.* Clam pastes and sauces are mainly oriental specialties and are of minor importance in this country. [Emphasis supplied.]

The Tariff Commission's description of clam juice as the liquid collected from clams by shucking or cooking, i.e., the natural, undiluted fluid, fully comports with the common meaning of the term "juice" and is, we find, an accurate indicator of the Congressional intent with respect to item 114.50.

Of course, the court must be chary of accepting as evidence of the legislative intent statements made by others after the fact. Studies

made after the enactment of a statute are not controlling in determining the intent of the enactors of that law. *Dodge & Olcott, Inc.* v. *United States*, 45 CCPA 113, C.A.D. 683 (1958) ; *W. R. Filbin & Co., Inc.* v. *United States*, 63 Cust. Ct. 200, C.D. 3897, 306 F. Supp. 440 (1969).

Nonetheless, in preparing the 1969 publication, the Tariff Commission undoubtedly was familiar with its statements in the 1948 *Summary* concerning clam juice and clam juice products (see *International Selling Corp.* v. *United States*, 62 Cust. Ct. 23, C.D. 3669, 294 F. Supp. 642 (1969)), a not unreasonable assumption considering the similarity of language employed in both summaries.

In view of the uniform, long-standing construction placed upon the term "juice" by the Tariff Commission, and in the absence of any showing to the contrary, we are not persuaded that a different meaning or intent should be ascribed to the language of item 114.50, which had been drafted by that Commission pursuant to a directive of Congress [2] and was adopted, without change, by that body.[3] Under such circumstances, the opinion of the compilers of the current *Summaries* as to what constitutes the clam juice of commerce carries considerable weight.[4]

Furthermore, Congress had been apprised in the 1948 *Summaries* of the Tariff Commission's understanding of the term "clam juice" and of the distinction it made between that item and preparations therefrom. Adoption of the proposed item with knowledge of the Commission's interpretation of the term is persuasive of legislative acceptance that the administrative interpretation is not incorrect. See *Ellis K. Orlowitz Company* v. *United States*, 47 Cust. Ct. 583, A.R.D. 136, 200 F. Supp. 302 (1961), affirmed *Id.* v. *Id.*, 50 CCPA 36, C.A.D. 816 (1963).

Defendant cites the long recognized rule that, in the absence of a showing of a contrary legislative intent, an *eo nomine* provision for an article without terms of limitation includes all forms of the article. *United States* v. *Page N. Goffigon*, 43 CCPA 172, C.A.D. 625 (1956). However, the rule is inapplicable to the article before us which we find is something more than clam juice The addition of one part water to two parts juice is not a negligible quantity to be ignored under the *de minimis* rule, as defendant claims : the water serves a definite purpose by rendering palatable, according to the uncontradicted testimony of the witness, the juice which is too bitter to drink in its natural state

---

[2] Section 101(b), Customs Simplification Act of 1954, P.L. 83–768, 68 Stat. 1136.

[3] Section 101(b), Tariff Classification Act of 1962, P.L. 87–456, 76 Stat. 72.

[4] No claim was made, and we do not find, that the article at bar is the "nectar" of these publications ; but, clearly, it is not the clam juice described therein.

and making it immediately usable in its imported condition as a beverage. See *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 CCPA 175, C.A.D. 304 (1945). It constitutes an advancement in condition which changes the character of the original material. *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 264, C.D. 2049 (1958).

Defendant's suggestion that the record establishes that the natural undiluted clam juice is never marketed is unwarranted. The negative response of a processor from Vancouver, Canada to the query whether he knows of anyone else who exports the natural clam juice is a far cry from establishing that such juice is not a commodity of commerce.

The record herein establishes (nor is it seriously disputed by defendant) that the importation at bar is fit for use as a beverage within the meaning of the headnote to Schedule 1, Part 12, Subpart B.

In view of our holding it is unnecessary to consider whether the addition of salt for flavoring altered the nature of the clam juice from a tariff standpoint. But, in this connection, see *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T.D. 35977 (1915).

For the foregoing reasons, we hold the merchandise at bar to be properly dutiable at 2 cents per gallon under TSUS item 166.40.

Judgment will be entered accordingly.