**BENDIX MOULDINGS, INC.**

v.

**UNITED STATES.**

C. D. 4576;  Court No. 67/45707–22195–67.

United States Customs Court.

Dec. 27, 1974.

Murray Sklaroff, New York City, for plaintiff.

Carla A. Hills, Asst. Atty. Gen., Edward S. Rudofsky, trial atty., New York City, for defendant.

WATSON, Judge:

The merchandise at issue herein consists of wood moldings whose surface has been treated in various ways. The moldings were generally imported in 9-foot lengths and all possessed a rabbet (a recessed groove cut into the rear inner edge of the molding). The rabbet is designed to hold a picture or mirror within the confines of the frames. After importation these articles are cut and joined to form frames.

The nature and characteristics of the importations as well as the testimony persuade me that they are dedicated for use in the manufacture of picture or mirror frames. Plaintiff claims that the importations *are* picture and mirror frames classifiable by name under item 206.60 and dutiable at the rate of 12% ad valorem. However, the mere fact that the importations are dedicated to such a use is *not* sufficient to constitute them the named articles even in an unfinished state. I am of the opinion the

importations are only the material from which frames are made and as such were properly classified as other wood moldings under item 202.66 and correctly assessed with duty at the rate of 17% ad valorem.

The general problem of when a "material" becomes an "article" is one which has long been the subject of judicial consideration. I believe certain useful guidelines emerge from a study of past case law. With respect to importations which are in a form dedicated to a certain use but from which the claimed individual articles have not yet fully emerged, to my mind the underlying question is whether the identity of an actual individual article can somehow be discerned.

In the case of In re Mills, 56 F. 820 (SDNY 1893), Judge Lacombe decided that certain lengths of fabric were improperly classified as partly made wearing apparel and were, in reality, simply manufactures of cotton. In language which is relevant to the instant case, Judge Lacombe stated that " * * * it must at least be made up sufficiently far to enable us to identify the particular article of wearing apparel that is going to be made out of it."

The latter case of United States v. Buss & Co., 5 Ct.Cust.Appls. 110, T.D. 34138 (1914), elaborated on this rule as follows (p. 113):

* * * [M]ost small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty* and in case the woven piece in its entirety is not commercially capable of any other use. [Emphasis supplied.]

In the case of United States v. Harding Co., 21 CCPA 307, T.D. 46830 (1933), long rolls of brake lining material were denied classification as unfinished parts of automobiles. Although the court considered the imported brake lining material to be "commercially capable" of uses other than in automobile brakes, its underlying reasoning was based more on the consideration that the importation was an undifferentiated material. The court stated that " * * * it is not marked to indicate where it is to be cut, for the obvious reason that, even when used as brake linings for automobiles, it must be used in various lengths; accordingly, the identity of the individual articles is not fixed with certainty." (P. 310.)

In the later case of Harding Co. et al. v. United States, 23 CCPA 250, T.D. 48109 (1936), in which it was definitely established that the lengths of brake lining material were dedicated for use in automobiles, the court made it unmistakably clear that so long as the identity of the individual articles could not be fixed with certainty the imported brake lining remained a material and could not be regarded as part of an automobile.

It need hardly be emphasized that there are no individual frames, finished or unfinished, whose identity is fixed with certainty at the time of importation of the wood moldings involved herein. Although these wood moldings are dedicated to the making of frames in the abstract, there are no discernable particular frames being imported.

In the case of American Import Co. v. United States, 26 CCPA 72, T.D. 49612 (1938), 60-foot lengths of silk fishing leader gut were held to be manufactures of silk rather than unfinished leaders. Although little remained to make the importations into leaders, the court found they were still simply material. Although this later opinion did not completely articulate its underlying rationale, its conclusion is consistent with the absence of discernable individual articles. It further suggests that no matter how close the importation is to the fin-

ished article or how dedicated it is to a single use, it remains a material until the identity of actual articles can be seen emerging with certainty from the undifferentiated material.

In the recent case of Sandvik Steel, Inc. v. United States, 66 Cust.Ct. 12, C. D.4161 (1971), long coils of steel blade which, after importation, were cut and bent to provide the cutting edge for dies used in cutting machines were held to be articles of iron or steel rather than unfinished cutting blades for power or hand machines. Most importantly, the court noted that at the time of importation the shape and size of the finished dies made from the articles in question were entirely indeterminate. As here, the production of identifiably distinct individual articles with a known size took place after importation. It seems clear that when the shape and size of an imported article cannot be determined at the time of importation no actual article can be discerned and therefore no article exists.

Another case in which the necessity of distinguishing individual articles from an undifferentiated material arose was Nyman & Schultz v. United States, 14 Ct.Cust.Appls. 432, T.D.42060 (1927). In that case, rolls of long thin strips of steel were held to have been properly classified as unfinished blades for safety razors. The court was particularly impressed by the presence in the center of the strips of perforations corresponding exactly to those which characterized the final individual blades and which therefore made them individually discernable. As regards the present importation, there is nothing about the lengths of wood molding which fixes with certainty the identity of the individual article which is claimed to exist.

All in all, I find no support for the proposition that the imported wood moldings are entitled to classification as if they were unfinished frames. The extent and completeness of their dedication to use as frames is to no avail since in their imported condition they are not dedicated to the making of *any particular frame*.

The case of J. E. Bernard & Co., Inc. v. United States, 50 Cust.Ct. 41, C.D. 2386 (1963), in which 100-foot-long coils of steel bandsaws were held to be classified as steel bandsaws, is not inconsistent with the conclusion I reach here to the extent there was evidence that the importations were usable as bandsaws in their imported lengths. However, I must conclude in general that the decision in *J. E. Bernard* owes more to the special considerations regarding the article in question and the legislative history of the provision involved than to the main body of precedent on the subject of materials versus articles.

Finally, the merchandise involved herein is less like a frame than the packages of two sides of frames which I denied classification as frames in Standard Brands Paint Co., Inc. v. United States, 71 Cust.Ct. 75, C.D.4477 (1973) (Customs Appeal 74–20 pending). There, the existence of unlimited possible combinations between the imported packages belied the importation and existence of any single identifiable and predictable frame. Here the unpredictability is even greater since the importations are not limited to use in four sided frames and are in a less differentiated form.

In conclusion I note that the provision for wood moldings pursuant to which the importations were classified is distinctly appropriate for the classification of surface treated wood moldings dedicated for use as frames. They concededly fall within the meaning of the term "wood moldings" and are in fact and law wood moldings. Since their surface is treated they are properly classifiable as "other" wood moldings pursuant to item 202.66. Although this result is obtainable without the necessity of consulting legislative history, it is nevertheless confirmed by the Tariff Classification Study, Explanatory Notes, Schedule 2, part 1, page 23, which indicates explicitly that item 202.66 covers picture frame moldings.

The impact of this particular piece of legislative history has been lessened by Judge Re's incisive conclusion in Border Brokerage Company, Inc. v. United States, 63 Cust.Ct. 243, C.D. 3903 (1969), that *untreated* picture frame moldings come within the plain language and scope of item 202.63 for standard untreated moldings. Nevertheless, as regards *treated* picture frame moldings, the language of item 202.66 and the legislative history are in harmony as, for that matter, are the results in the *Border Brokerage* case, *supra*, and the results herein. Untreated picture frame moldings are classifiable in item 202.62 or item 202.64 while treated picture frame moldings are classifiable in item 202.66.

Judgment will enter accordingly.