(C.D. 4747)

JOHN H. FAUNCE, INC.
MASONITE CORPORATION } *v.* UNITED STATES

Court No. 69/35104

(Decided June 7, 1978)

*Sharretts, Paley, Carter & Blauvelt* (*Patrick D. Gill* and *Donald W. Paley* of counsel) for the plaintiffs.

*Barbara Allen Babcock*, Assistant Attorney General (*John J. Mahon*, trial attorney), for the defendant.

NEWMAN, Judge: This action concerns the proper tariff classification for a "Motala" hardboard press speed-up hydraulic system exported from Sweden and entered at the port of Philadelphia in December 1968.

The speed-up system was assessed with duty by the district director at the rate of 9 per centum ad valorem pursuant to item 678.50, TSUS, as modified by T.D. 68–9, which provides for "Machines not specially provided for, and parts thereof". Defendant now claims, for the first time in its post-trial brief, that the merchandise is classifiable under item 661.70, TSUS, as modified, as part of an industrial machine for

the treatment of materials by a process involving a change of temperature, which is dutiable at the rate of 11 per centum ad valorem. To assert this newly proposed classification, defendant moves to amend the pleadings to conform to the evidence under rule 4.8(b).

Plaintiffs claim that the merchandise is properly dutiable at the rate of 6 per centum ad valorem, either under the provision in item 668.06, TSUS, as modified, covering "Parts of machines for making cellulosic pulp, paper or paperboard", or alternatively under the provision in item 668.00, TSUS, as modified, covering "Machines for making cellulosic pulp, paper, or paperboard". In their reply brief, plaintiffs strenuously object to defendant's motion under rule 4.8(b).

## I.

At the trial, each party presented the testimony of two witnesses and various exhibits. The official papers were received in evidence, without marking. Plaintiffs' witnesses were: George Uding, vice president of manufacturing for the Hardboard Division of Masonite Corporation; and Jack Mulholland, vice president of manufacturing technology and engineering for Masonite Corporation. Defendant's witnesses were: Harry Radden, president of Miller Hoft, Inc.; and Charles A. Shoudy, vice president of project engineering for Olin Craft.

Portions of the record in *F. S. Whelan & Sons* v. *United States,* 40 Cust. Ct. 192, C.D. 1982 (1958), were incorporated in the record of the present case upon defendant's motion before trial, pursuant to an order of the court dated November 25, 1975.

In the circumstances of the present case, it is unnecessary to dwell at length on the testimony of record. The pertinent facts are not in dispute, and may be briefly summarized.

It has been clearly established that the imported speed-up hydraulic system was installed as an integral part of Masonite's Motala hardboard press located at its plant in Towanda, Pennsylvania. The system is designed to speed up the production cycle of the Motala hardboard press, thus increasing its efficiency in the production of hardboard. Further, it has been shown that the Motala hardboard press, by a combination of heat and pressure, consolidates a loose interfelting of fibers "so that you have a hard dense product which is known as hardboard" (R. 43). Finally, it appears that the Motala press is of the same class or kind as the hardboard press involved in *United States* v. *Superwood Corporation,* 52 CCPA 57, C.A.D. 858 (1965).

## II.

In order for plaintiffs to prevail on either of their alternative claims, they were required to establish that the speed-up hydraulic system

was used for making cellulosic pulp, paper or paperboard. There is no dispute that Masonite's Motala press (of which the speed-up system is a part) was used for making hardboard. Consequently, the tariff classification of hardboard itself is pivotal in determining whether the speed-up system is classifiable under either of the claimed provisions.

As dispositive of the issue presented, plaintiffs rely upon the *Whelan* and *Superwood* cases, *supra*, decided under the Tariff Act of 1930. In the 1930 act, there was no specific provision for hardboard. Thus, in *Whelan*, hardboard was held properly dutiable as pulpboard under paragraph 1413 of the Tariff Act of 1930.[1]

Again, in *Superwood*, hardboard was held to be a form of paper, and certain hardboard making equipmĕnt (including a hydraulic press) was determined to be properly dutiable under paragraph 372 of the Tariff Act of 1930 as machines for making paper. Accordingly, if this case were governed by the Tariff Act of 1930, *Whelan* and *Superwood* would, plainly, be dispositive.

However, defendant contends that *Whelan* and *Superwood* are not viable under the TSUS in view of the new *eo nomine* provisions for hardboard, which defendant emphasizes were included in part 3 of schedule 2 of the Tariff Schedules rather than in part 4 of schedule 2. It should be noted that part 3 covers "WOOD VENEERS, PLYWOOD AND OTHER WOOD-VENEER ASSEMBLIES, AND BUILDING BOARDS", whereas part 4 includes "PAPER, PAPERBOARD, AND PRODUCTS THEREOF". Additionally, defendant cites headnote 1, part 1, schedule 2, in support of its contention that in the TSUS Congress recognized hardboard as wood. Headnote 1 reads:

> 1. For the purposes of subparts D, E, and F of this part, hardboard shall be deemed to be wood.

I agree with defendant that *Whelan* and *Superwood* are not controlling under the TSUS. Fundamentally, a judicial construction under a prior tariff act is not dispositive in a case arising under the TSUS, where as here, there has been a substantial change in the statutory provisions affecting the product. *Cf. Inter-Maritime Forwarding Co., Inc.* v. *United States*, 70 Cust. Ct. 133, C.D. 4419 (1973).

As observed, *supra*, there was no specific provision for hardboard in the Tariff Act of 1930, whereas in the TSUS, hardboard is covered *eo nomine* and included in part 3 of schedule 2, rather than in part 4 of schedule 2. The inclusion of hardboard in part 3 rather than in part 4 of schedule 2, as well as the insertion of headnote 1, part 1, schedule 2, clearly evinces a congressional recognition that hardboard is wood, and not paper or paperboard.

---

[1] See also *F. S. Whelan & Sons* v. *United States*, 34 Cust. Ct. 208, C.D. 1706, 136 F. Supp. 328 (1955), wherein the same conclusion was reached.

Even prior to the TSUS, Congress recognized hardboard as wood in various bills seeking to reclassify hardboard under the wood schedule of the Tariff Act of 1930. Hence, in *Weyerhaeuser Company* v. *United States (Abitibi Corporation, Party-in-Interest)*, 71 Cust. Ct. 81, 92, n. 9, C.D. 4479 (1973), Judge Maletz stated:

> Although the House passed an amended version of H.R. 9666 in the second session of the 83d Congress and the Senate in the next session of Congress in 1955 (84th Cong., 1st Sess.) passed a similar provision as an amendment to a tariff bill, the Conference Committee deleted the hardboard reclassification portion of the bill in response to a letter from the President. This letter stated that "[b]y the Customs Simplification Act of 1954, the Congress instructed the U.S. Tariff Commission to review the entire schedule of tariff classifications and to recommend changes needed to remove anomalies and injustices. Action now by the Congress on any specific commodity would directly contravene this process which assures all industries of an orderly method for full consideration of their classification problems." See *Tariff Classification Study, Explanatory and Background Materials*, Schedule 2, at 205, 276 (1960).

In S. Rep. No. 387, 84th Cong., 1st Sess. 2 (1955), the Senate Finance Committee reported:

> * * * When the 1930 act was adopted, hardboard was a relatively unknown product. When first developed, it had some of the qualities of paperboard and was administratively classified as a paper product; however, later developments resulted in the production of hardboard which not only had the principal properties of wood but also a counterpart of wood in general usage.

Moreover in 1954, pursuant to a resolution and directive of the Senate Finance Committee, the Tariff Commission (since renamed International Trade Commission) conducted an investigation with respect to the hardboard industry in the United States and hardboard's tariff classification. See United States Tariff Commission, *Hardboard, Report on Investigation Conducted Pursuant to a Resolution by the Committee on Finance of the United States Senate, dated August 9, 1954* (1955). Based upon its thorough investigation, the majority of the Commission found, *inter alia* (at page 7), "that a specific enumeration of hardboard would be more appropriate *in the tariff schedule covering wood products* than in either the tariff schedule covering paper products or any other tariff schedule" (emphasis added). See also *Tariff Classification Study*, schedule 2 (Nov. 1960), pages 276–79. As noted above, in the TSUS hardboard was specifically enumerated in part 3 rather than in part 4 of schedule 2.

In light of the clear legislative recognition of hardboard as a wood product, I am persuaded that in the TSUS, Congress did not intend that hardboard should be regarded as paper or paperboard for purposes

of classifying machines and parts under items 668.00 and 668.06, TSUS. In my opinion, the machines for making paper and paperboard, and parts thereof, intended to be classified under items 668.00 and 668.06, TSUS, are those machines and parts that make the paper or paperboard products within the ambit of *part 4*, schedule 2. Since hardboard explicitly is not paper or paperboard within the purview of part 4, schedule 2, neither item 668.00 nor 668.06 embraces the importation.

In sum, plaintiffs' contention (brief, p. 29) that the provisions for hardboard in the TSUS "did not represent the conclusion that hardboard is not paper or paperboard" is totally without merit. If Congress considered hardboard as paper or paperboard, as urged by plaintiffs, hardboard most certainly would have been included with the paper and paperboard products in part 4 of schedule 2, rather than with the wood products in part 3 of schedule 2. Plainly, it would be anomalous and completely illogical to have excluded hardboard from part 4 of schedule 2 if Congress intended that hardboard should be considered as "paper or paperboard" for purposes of classifying machines or parts thereof under items 668.00 and 668.06, TSUS. For the foregoing reasons, I conclude that the imported speed-up system is not classifiable under the provisions claimed by plaintiffs.[2]

## III.

As stated *supra*, defendant has moved to amend the pleadings to conform to the evidence, pursuant to rule 4.8(b), in order to assert, as it did for the first time in its brief, a proposed classification under item 661.70, TSUS.[3] Rule 4.8(b) reads:

(b) Amendments To Conform to the Evidence: When issues not raised by the pleadings are tried by express consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. If evidence is objected to at trial on the ground that it is not within the scope of the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to

[2] Although not cited by either party, the *Summaries of Trade and Tariff Information*, schedule 6, volume 8 (1967), page 217, state that item 668.00, TSUS, includes "machines for producing cellulosic building boards, such as insulating board and hardboard". Although considered as authoritative for certain purposes, the *Summaries* issued after the enactment of the TSUS, are not part of its legislative history, and therefore cannot be considered controlling as to legislative intent. *Amico, Inc. (Formerly Known As: Exhibit Sales, Inc.)* v. *United States*, 71 Cust. Ct. 182, C.D. 4494 (1973); *Volkswagen of America, Inc.* v. *United States*, 68 Cust. Ct. 122, C.D. 4348 340 F. Supp. 983 (1972), *aff'd per curiam*, 61 CCPA 41, C.A.D. 1115, 494 F. 2d 703 (1974); *W. R. Filbin & Co., Inc.* v. *United States*, 63 Cust. Ct. 200, C.D. 3897, 306 F. Supp. 440 (1969); *Border Brokerage Company, Inc.*, v. *United States*, 64 Cust. Ct. 331, C.D. 3999 (1970).

[3] Defendant requested that the second argument in its brief be considered such a motion.

satisfy the court that the admission of such evidence will prejudice him in maintaining his action or defense upon the merits. The court shall afford the objecting party an opportunity to meet such evidence.

Item 661.70, TSUS, as modified, provides for "Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; * * * all the foregoing * * * and parts thereof: * * * Other", with duty at the modified rate of 11 percent ad valorem. Defendant contends that since the speed-up system is used in a hardboard press which utilizes heat and pressure, the importation is classifiable under item 661.70, TSUS; and that even if the importation is classifiable under both item 661.70 and either item 668.00 or 668.06, item 661.70 must prevail by virtue of headnote 1, subpart A, part 4, schedule 6. That headnote provides:

1. A machine or appliance which is described in this subpart and also is described elsewhere in this part is classifiable in this subpart.

Significantly, the *Tariff Classification Study*, schedule 6, discusses item 661.70, TSUS, as follows (at page 263):

* * * Item 661.70 covers industrial and laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change in temperature. This equipment is designed to submit materials to a heating or cooling process in order to cause the simple change of temperature, *or to cause the transformation of materials resulting principally from the temperature change. The item does not cover equipment in which the heating or cooling, even if essential, is merely a secondary function designed to facilitate the main function.* * * * [Emphasis added].

As indicated in the *Tariff Classification Study*, equipment is not embraced by item 661.70 unless the transformation of materials results *principally* from the temperature change. See *Jagenberg U.S.A., Inc. v. United States*, 66 Cust Ct. 247, C.D. 4198 (1971). The record is clear that in the production of hardboard with a Motala press a *combination* of heat and pressure is utilized. (R. 59, 106, 119–20, 133–34). Thus, item 661.70 raises an issue of fact as to whether heat in the Motala press is merely secondary, designed to facilitate the pressure applied by the press; or whether pressure is secondary, designed merely to facilitate the application of heat; or whether heat and pressure are coequal functions of the Motala press.

I do not find, nor does defendant cite, any evidence of record specifically addressed to the factual issue of whether the transformation of materials in the Motala press results *principally* from temperature

·change. Nevertheless, defendant baldly argues in its brief that "the application of heat cannot be said to be a secondary function". (Defendant's brief, page 35). Since no evidence was adduced concerning the factual issues raised by item 661.70, in no event could a determination be made that the merchandise is properly classifiable under such provision. Fundamentally, the district director's classification under item 678.50, TSUS, is presumed to be correct, and "the presumption that the goods have been properly classified has evidentiary weight, in and of itself". *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, 58, C.A.D. 1004, 435 F.2d 1315 (1970). Consequently, it is presumed the district director correctly found that the merchandise is not classifiable under item 661.70, TSUS.

In a word, defendant's reliance on rule 4.8(b) is misplaced, and its motion to amend the pleadings to conform to the evidence is denied.

However, inasmuch as plaintiffs failed to establish the propriety of either of the claimed classifications, this action is dismissed. Judgment will be entered accordingly.