The TORRINGTON COMPANY, Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 81–3–00315.

United States Court of International Trade.

Aug. 24, 1984.

Siegel, Mandell & Davidson, P.C., New York City (Steven Zelman and Michelle Benjamin, New York City, on brief) for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Saul Davis, New York City, on brief), for defendant.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

The respective parties in this matter seek judgment upon a stipulation of agreed facts filed in lieu of a trial. Jurisdiction lies in this court pursuant to 28 U.S.C. § 1581(a) (1982), and the question before the court is one of law.

The subject of this action is industrial sewing machine needles manufactured in and exported from Portugal to the United States. At the time of exportation, Portugal was designated as a beneficiary developing country (BDC) pursuant to the Generalized System of Preferences (GSP), *see* Trade Act of 1974, § 502, 19 U.S.C. § 2462(a)(1) (1982), and the industrial sewing machine needles were entered under item A672.20 of the Tariff Schedules of the

United States (TSUS) free of duty as eligible items under the GSP.[1] Later, at the time of liquidation, the United States Customs Service (Customs) reclassified this merchandise under item 672.20 [2] at the rate of 10 percent ad valorem plus 37 cents per thousand pieces. Customs denied the allowance of duty-free GSP treatment to the imported merchandise, based upon its determination that the merchandise did not incorporate any "materials produced" in Portugal and that the direct cost of processing operations performed in Portugal was less than 35 percent of the appraised value of the merchandise at the time of its entry into the United States.[3] Plaintiff contends that the imported merchandise is composed of and incorporates "materials produced" in Portugal as that term is defined in the Customs Regulations. The parties have agreed that if the Court so finds, the statutory 35 percent minimum will have been satisfied. See Stipulation of Agreed Statement of Facts ¶ 8.

The production of the imported merchandise involves several manufacturing processes including swaging, striking, piercing, mill flash, mill groove, pointing and repointing. These processes are performed in Portugal by plaintiff. See Stipulation ¶¶ 11, 17–29. The raw material in this case (wire), upon which the processes were performed, however, was not manufactured in Portugal but in another country that was not designated as a beneficiary developing country under the GSP. The wire imported into Portugal was specifically chosen for its alloy content and surface finish, both of which made the wire particularly suitable for use in the manufacture of sewing machine needles.

The question before the court is whether the non-BDC wire was a "material produced in the BDC," the cost of which should have been included in the evaluation by Customs. For the cost of the non-BDC wire to be included, the wire must have been substantially transformed in the BDC into a new and different article of commerce. 19 C.F.R. § 10.177(a)(2) (1983). Whether or not the required substantial transformation took place is therefore the issue before this court.

Plaintiff argues that the cutting, beveling and drawing of wire to produce swaged needle blanks constitutes the required substantial transformation and that swaged needle blanks are articles of commerce new and different from the wire from which they are produced. Defendant, on the other hand, argues that the GSP statute and regulations require two substantial transformations into new and different articles of commerce and that these transformations did not take place in the case at hand.

1. General Headnote and Rule of Interpretation 3(c)(ii), TSUS, provides in pertinent part:

Articles for which the designations "A" or "A*" appear in the column entitled "GSP" of the schedules are those designated by the President to be eligible articles for purposes of the GSP pursuant to Section 503 of the Trade Act of 1974. The designation "A" signifies that all beneficiary developing countries are eligible for preferential treatment with respect to all articles provided for in the designated TSUS item .... Whenever an eligible article is imported into the customs territory of the United States directly from a country or territory listed in subdivision (c)(i) of this headnote, it shall receive duty-free treatment, ... provided that, in accordance with regulations promulgated by the Secretary of the Treasury the sum of (A) the cost or value of the materials produced in the beneficiary developing country ... plus (B) the direct cost of processing operations performed in such beneficiary developing country ... is not less

than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

2. Item 672.20, TSUS, provides as follows:
Sewing machines and parts thereof, including furniture specially designed for such machines:

....
    Parts:
        Needles .................. 37¢ per 1000,
                + 10% ad val.

3. With respect to entry numbers 211431 and 210816, Customs denied GSP treatment based upon the additional ground that no Certificates of Origin Form A were filed by plaintiff with the District Director of Customs. Plaintiff has conceded that the absence of the Form A, unless waived, is grounds for denial of duty-free entry under the GSP. Accordingly, the merchandise composing entry numbers 211431 and 210816 must be denied duty-free treatment.

The two-stage process advocated by the defendant is that the non-BDC material must be substantially transformed into a "material produced in the BDC," and then the "material produced in the BDC" must be substantially transformed into the imported article. Since the imported merchandise was produced from non-BDC wire, defendant argues the processes which completed the imported items did not constitute the required two-stage substantial transformation. This court must first determine how many substantial transformations are required in this case and then decide whether the processes that occurred meet the substantial transformation requirements.

I

The statute relevant to this controversy is 19 U.S.C. § 2463(b) (1982), which was incorporated into the TSUS as General Headnote 3(c)(ii), and provides that an imported eligible article can only be accorded duty-free treatment if "the sum of (A) the cost or value of the *materials produced* in the beneficiary developing country ... plus (B) the direct costs of processing operations performed in such beneficiary developing country ... is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States." 19 U.S.C. § 2463(b)(2) (emphasis added). The pertinent regulations promulgated by the Secretary of Treasury to carry out this subsection are set forth in part here.

19 C.F.R. § 10.176(a) provides in pertinent part:

(a) *Merchandise produced in a beneficiary developing country or any two or more countries which are members of the same association of countries.* Merchandise which is (1) the growth, product, manufacture, or assembly of (i) a beneficiary developing country ... and (2) imported directly from such beneficiary developing country ... may qualify

for duty-free entry under the Generalized System of Preferences ("GSP"). However, duty-free entry under GSP may be accorded only if: (i) The sum of the cost or value of the materials produced in the beneficiary developing country ... plus (ii) the direct costs of processing operations performed in such beneficiary developing country ... is not less than 35 percent of the appraised value of the article at the time of its entry into the customs territory of the United States.

19 C.F.R. § 10.177(a) provides in pertinent part:

(a) *"Produced in the beneficiary developing country" defined.* For purposes of §§ 10.171 through 10.178, the words produced in the beneficiary developing "country" refer to the constituent materials of which the eligible article is composed which are either:

(1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

(2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

■ It is clear that before a non-BDC material can be regarded as a "material produced" in the BDC, with its cost includable in the evaluation by Customs, the non-BDC material must be substantially transformed into a new and different article of commerce, that is, one having a distinctive name, character or use. The question raised by the defendant is whether a two-stage substantial transformation is required. This Court finds that such a two-stage process is required and finds that a substantial transformation of non-BDC material is necessary in order for the non-BDC wire to be regarded as "material produced" in the BDC and to be included in the 35 percent value-added evaluation. Although not explicit, the dual requirement can be gleaned from the statute. The administrative agencies have consistently supported and utilized the dual requirements,[4] and

4. *See* C.S.D. 79–312, 13 Cust.Bull. 1464 (1978); T.D. 78–400, 12 Cust.Bull. 875 (1977); T.D. 76– 100, 10 Cust.Bull. 176 (1976).

such a requirement is not contrary to the GSP statute and its goals.

Regulations promulgated by Customs define the term "materials produced" to include materials from third countries that are substantially transformed in the BDC into a new and different article of commerce. 19 C.F.R. § 10.177(a)(2). It is not enough to transform substantially the non-BDC constituent materials into the final article, as the material utilized to produce the final article would remain non-BDC material. There must first be a substantial transformation of the non-BDC material into a new and different article of commerce which becomes "materials produced," and these materials produced in the BDC must then be substantially transformed into a new and different article of commerce. It is noted that 19 C.F.R. § 10.176(a) distinguishes between "merchandise produced in a BDC" and the cost or value of the "materials produced in the BDC" which demonstrates the contemplation of a dual substantial transformation requirement. Furthermore, absent such a dual requirement, the GSP's goal of industrialization, diversification, and economic progression for underdeveloped nations could be frustrated. For example, a BDC could import eligible items, merely decorate or assemble these items and thereby satisfy the 35 percent value-added requirement since these direct costs of processing operations would be includable in the calculation. In this manner, BDC's could become mere conduits for the merchandise of developed countries. This is not the type of economic development envisioned by the GSP program. Indeed, the regulations implementing the GSP ought to be interpreted to further, not hinder, the program's stated goals.[5]

■ Having established that a dual substantial transformation is indicated, the Court will turn to the critical question of whether this two-stage substantial transformation was met in this case.

The term "substantial transformation" is used to depict a processing that results in a new article having a distinctive name, character, or use. *See Texas Instruments, Inc. v. United States,* 69 CCPA 152, 156, 681 F.2d 778, 782 (1982). In the case at hand, the wire imported into Portugal goes through a variety of processes,[6] the first of which is swaging. The swaging machine straightens the wire, cuts the straightened wire to particular lengths according to specifications desired, bevels one end of the wire and draws the straightened wire to alter its length and circumferences at various portions in accordance with the final specification desired. After the completion of this operation, the merchandise is referred to in the sewing machine trade as needle blanks, swages, swage blanks, and/or swaged needle blanks.

Based upon the explanation given by the parties, and this court's careful observation of Exhibit A (the imported wire) as well as Exhibit B (the swaged needle blank), it would be difficult for this court not to find that a substantial transformation of the imported wire had taken place. Not only does the name and use of the wire change, but also its character. The wire has been cut to a specific length, beveled to meet specifications, and its circumference has been altered. It is clear that a fundamental and significant change has taken place.

Furthermore, the swaged needle blank can be regarded as a new and different article of commerce from the wire of which it was produced. After the swaging process, the once-called "wire" becomes a swaged needle blank. This name is known and recognized throughout the industry. Stipulation ¶ 12. The fact that the swaged needle blank is referred to by Torrington personnel internally as material in process, rather than swaged needle blanks, does not alter or diminish the fact that this item is

---

5. *See* Cutler, *The United States Generalized System of Preferences: The Problem of Substantial Transformation,* 5 N.C.J. Int'l L. & Com.Reg. 393, 400–01 (1980).

6. These processes have been stipulated to by the parties. *See* Stipulation ¶¶ 11, 17–29.

referred to industry-wide as swaged needle blanks, swages, or swaged blanks. The swaged needle blank is a new and different article of commerce. Plaintiff has related to the court two documented occasions where Torrington Portugesa sold over four million swaged needle blanks, described as such on the relevant invoices, to the plaintiff. Although the buying and selling was between related companies, this court finds these transfers evidence that swaged needle blanks are articles of commerce. Furthermore, there have been other importations of similar merchandise ("latch needle blanks") by companies other than the plaintiff. *See Pistorino & Co. v. United States,* 69 Cust.Ct. 48, 350 F.Supp. 1392 (1972); *Pistorino & Co. v. United States,* 53 Cust.Ct. 174 (1964), *modified,* 61 Cust.Ct. 100, 287 F.Supp. 978 (1968).

The swaged needle blanks are new and different articles of commerce from both the wire from which they are made and the variety of industrial sewing machine needles into which they are manufactured. The swaged needle blanks are not needles themselves, but constituent materials of needles produced in the BDC within the meaning of 19 C.F.R. § 10.177(a)(2). Although these constituent materials must be further manufactured to become functional industrial sewing machine needles,[7] this court does not find that the swaged needle blanks are merely an unfinished needle but rather a separate and distinct intermediate item with its own name and character. The transformation from wire to swaged needle blanks constitutes the first substantial transformation of a two-stage process.

The processes that occur to transform a swaged needle blank into an industrial sewing machine needle support the conclusion that a second substantial transformation took place. After the completion of the swaged needle blank, the first process that occurs is "striking." In this process, the striking machine presses an eye into the swaged needle blank, forms a spot to provide clearance for the thread or hook which will function to hold the thread, and bevels the swaged blank at a particular location. Next, the blanks are "mill flashed." The mill flash machine removes any excess material around the eye and forms a groove which serves to carry the thread when the finished sewing machine needle is in use. A point is then placed on the needle and the blade size and/or needle type and/or company logo is placed on the needle shank by another machine. These basic manufacturing processes substantially transforming the swaged needle blank are depicted in Plaintiff's Exhibit D.

Thereafter, a finishing process occurs whereby the articles are hardened and tempered in furnaces and then aligned on a wooden bar and polished and buffed by hand. The articles are threaded through needle eyes with emery thread to remove burrs which may be present in the eyes. The articles are also mechanically straightened to remove any distortion and are repointed to give them their finished points and final sharpness. Thereafter, the articles are placed in a tumbling barrel to remove the dark coating and then cleaned with buffing wheels. The burrs are removed and the articles are chrome plated. Finally, the articles are again heat-treated and buffed. All articles below a particular size and any rejects are hand straightened as appropriate. The finished sewing machine needle is reflected in Plaintiff's Exhibit E.

Finally, the GSP was enacted to promote "economic diversification, and export development" in less developed countries. S.Rep. No. 1298, 93d Cong., 2d Sess 4, *reprinted in* 1974 U.S.Code Cong. & Ad. News 7186, 7187. The Customs Regulations should be read in light of and to further the intent of Congress.

**CONCLUSION**

Having found that the required substantial transformation of the non-BDC wire into a new and different article of commerce occurred, the cost of the non-BDC

---

7. The finished product of one manufacture may become the material of the next in rank. *A.H. Ringk & Co. v. United States,* 16 Ct.Cust.Appls. 132, 136 (1928) (cases cited).

**1088**

wire should have been included in the value-added requirements of General Headnote 3(c)(ii), TSUS. With no issues having been raised as to the other GSP requirements,[8] and the parties having stipulated that if the cost of the wire is included that the 35 percent statutory minimum is met, this court holds that the imported merchandise in this case is entitled to duty-free GSP treatment.

Plaintiff's claims, with the exception of Entry Nos. 211431 and 210816,[9] therefore, must be, and hereby are, sustained.

The industrial sewing machine needles which are the subject of this action, imported under port of Hartford entry numbers 210815 and 212659, are properly classifiable under Item A672.20, TSUS, and are free of duties under the Generalized System of Preferences. The District Director of Customs at the port of Bridgeport shall reliquidate the entries accordingly and refund the duties assessed on the merchandise covered by said entries, together with interest accruing from March 24, 1981, the date of the filing of the summons.

8. The other GSP requirements have been met. Portugal is listed in General Headnote 3(c)(i) as a beneficiary developing country; the articles described by TSUS item A672.20 are GSP "eligible items" and the industrial sewing machine needles were imported from Portugal directly into the customs territory of the United States.

9. Since no Certificates of Origin were filed by plaintiff with the District Director of Customs in connection with Entry Nos. 211431 and 210816 and the production of these certificates were not waived by the district director, plaintiff cannot prevail with respect to these entries.