SANWA FOODS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81–10–01363

Before FORD, *Judge.*

(Decided March 25, 1985)

*Glad, White & Ferguson (Steven B. Lehat* on the brief) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Handler-Menahem* on the brief) for the defendant.

FORD, *Judge:* This action involves the classification of rolls of plastic packaging imported from Japan and entered at the Port of Los Angeles, California. Plaintiff contests the denial of a timely protest filed with respect to the merchandise at issue. Jurisdiction is pursuant to 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a).

The parties are before the Court on cross-motions for summary judgment. There are no material facts at issue. The subject merchandise was classified by the Customs Service under Tariff Schedules of the United States (TSUS) item 774.55 as "[A]rticles not specially provided for, of rubber or plastics: * * * other" and assessed with duty at the rate of 8.5 percent ad valorem. Plaintiff claims the articles involved are properly subject to classification alternatively under TSUS item 274.85 as "[P]rinted matter not specially provided for: other: [S]usceptible of authorship" at 2 percent ad valorem; under item 274.90 as "[P]rinted matter not specially provided for: other: other" at 7.2 percent ad valorem; or under item 772.20 as "[C]ontainers, of rubber or plastics, with or without their closures, chiefly used for the packing, transporting, or marketing of merchandise * * * other" at 7.5 percent ad valorem.

The imported merchandise consists of rolls of unassembled plastic packaging for various noodle mixes produced by plaintiff. Printed on each roll at regular intervals are the trademarked product brand name, product descriptions, preparation instructions, and magnetic black ink marks. The marks are read by an electric eye, which triggers a mechanism that cuts, folds, and seals the plastic around various noodle mixes in accordance with the location of the marks. The subject merchandise thus serves both to protect its contents and promote the sale of the product.

Of initial concern is plaintiff's claim of classification under two alternative items, both of which center on whether the subject merchandise constitutes "printed matter" within the meaning of the Tariff Schedules. By virtue of its distinctive advertising features, it is undisputed the merchandise is susceptible of authorship. This premise is fully supported by long-established case law. *United States* v. *American Railway Express Co. et al.,* T.D. 43317, 17 CCPA 10 (1929).

In considering the printed matter claim under either 274.85 or item 274.90, TSUS, the Court examines, by reference, the appropriate headnote in determining the applicability of those items. Schedule 2, Part 5, Headnote 1, TSUS, provides, in pertinent part, as follows:

> * * * this part covers only printed matter consisting essentially of textual or pictorial matter * * * this part does not cover any article in which printing is merely incidental to the primary use of the article or in which printing is employed mainly for coloration or to produce a decorative or novelty effect * * *.

The essential characteristic of the merchandise at issue is its packaging quality and not the printing contained thereon. While the printing serves a marketing purpose, the principal function of this merchandise is protection of the packaged product. Any additional uses are merely incidental.

This Court reached a similar conclusion in denying merchandise treatment as printed matter in *Norman G. Jensen, Inc., A/C Calhoun's Collectors Society Inc.* v. *United States,* 84 Cust. Ct. 76, C.D. 4846, 490 F.Supp. 497 (1980), *aff'd,* 68 CCPA 5, C.A.D. 1255, 634 F.2d 1345 (1980). The *Jensen* case involved gold strips with a design embossed on their face. The Court, while acknowledging "that embossing may be printed matter within the purview of part 5 of schedule 2", found that determination alone was not dispositive as to whether the merchandise involved could be classified as printed matter. Relying on the *Brussels Nomenclature,* The Court stated "for an article to be printed matter' under part 5, the essential character of the article must be imparted by the textual and pictorial matter contained thereon". In the case at bar, the essential character of the merchandise is its packaging function and not the utilization of the packaging for advertising. Classification of the merchandise as printed matter is therefore denied, as the criteria for such classification, derived from both statute and case law, have not been met.

Plaintiff's reliance on the holding in *J.A. Chambers* v. *United States,* T.D. 37812, G.A. 8208 (1918), to support its printed matter claim is unfounded. In *Chambers,* uncut paper wrappers printed with a trademark and product description were found to be printed matter. However, the relevant provisions in *Chambers* arose under the Tariff Act of 1913 and were not controlled by Headnote 1 of Part 5, Schedule 2 (TSUS), the determinative statutory provision pertaining to this claim. Moreover, in its treatment of paper wrappers under the 1913 Act, the Board of General Appraisers was limited to classification alternatives as either "printed matter" or "manufacturers of paper".[1] Where there has been a substantial change in the statutory language, judicial construction under a prior tariff act is not dispositive. *John H. Faunce Inc., Masonite Corporation* v. *United States,* 80 Cust. Ct. 139, C.D. 4747 (1978); *Inter-Maritime Forwarding*

---

[1] The Court notes "wrapping paper" is now specifically provided for under TSUS item 252.86.

*Co.* v. *United States,* 70 Cust. Ct. 133, C.D. 4419 (1973). Consequently, the decision in *Chambers* (supra) is not germane to the present case.

In evaluating a classification claim under TSUS item 772.20 (the "containers" provision), certain considerations must be weighed. In its imported condition, the subject merchandise is incapable of "containing", as it consists of continuous lengths of flat plastic. The question arises, therefore, as to whether the merchandise is unassembled or unfinished for the purposes of item 772.20.

General Interpretative Rule (10)h, TSUS, states:

> (h) unless the context requires otherwise, a tariff description for an *article* covers such article, whether assembled or not assembled, and whether finished or not finished; (Emphasis added.)

Under this rule, *articles* which are not assembled or finished are classified as if they are complete.

Defendant argues the merchandise at issue is merely wrapping *material* which requires further processing after importation, thus precluding classification as an unfinished or unassembled article. Defendant further argues the "substantial manufacturing" the plastic undergoes in the United States removes it from Rule 10(h) through the "unless the context requires other" limitation therein.

Whether particular merchandise is a material or an unfinished article is a question which has been before the Courts on numerous occasions, with differing results depending on the facts and the statutory language in each case. *United States (American Sponge & Chamois Co., Inc., Party in Interest)* v. *Nylonge Corporation,* 48 CCPA 55, C.A.D. 764 (1960); *Avins Industrial Products Co.* v. *United States,* 72 Cust. Ct. 43, C.D. 4503 (1974), *aff'd,* 62 CCPA 83, C.A.D. 1150, 515 F.2d 782 (1975). In *Avins* (supra), many of the cases dealing with this issue were reviewed and further discussion is both unnecessary and unwarranted. The merchandise in the present case, upon importation in rolls of flat length plastic, is cut, folded, and sealed around the various noodle mixes. The character and identity of the individual pieces, cut to specific sizes with distinctive printing thereon, is fixed. The merchandise is not commercially capable of any use other than packaging these particular products. See e.g. *United States* v. *Buss & Co.,* 5 Ct. Cust. Appls. 110, T.D. 34138 (1914); *Bendix Mouldings, Inc.* v. *United States,* 73 Cust. Ct. 204, C.D. 4576, 388 F.Supp. 1193 (1974). Additionally, plaintiff's merchandise is marked at regular intervals for the purposes of the above processes, a factor found to be indicative, if not solely determinative, of classification as an article in prior cases. See e.g. *United States* v. *The Harding Co.,* 21 CCPA 307, T.D. 46830 (1933) and *The Harding Co., et al.* v. *United States,* 23 CCPA 250, T.D. 48109 (1936). In sum, the factors noted above lead the Court to conclude the merchandise is sufficiently advanced toward completion of the finished product to justify its catagorization as "articles" within the context of the Tariff Schedules.

Having determined the merchandise to be "articles", the remaining question before the Court is whether these articles constitute "containers" for the purposes of TSUS item 772.20. The subject merchandise is used to contain articles in the stream of commerce. It is used to transport goods to a retail store and to exhibit the articles for sale. In *Imperial Packaging Corp.* v. *United States,* 2 CIT 250 (1981), this Court found the above factors determinative in denying classification under item 772.20 for plastic bags imprinted with the retailer's name. The bags were furnished to retail customers at the point of sale for carrying purchases home. The merchandise involved here, however, fits both the criteria set forth in *Imperial Packaging* (supra) and the "chiefly used for the packaging, transporting, or marketing of merchandise" qualification found in item 772.20. The plastic packaging at issue is thus properly classifiable under TSUS item 772.20.

This conclusion is substantiated by examination of the *Summary of Trade and Tariff Information,* TSUS items 772.20, 772,85, and 772.86 (April 1981) prepared by the United States International Trade Commission.[2] As noted in *Imperial Packaging* (supra), the *Summary* provides (at pages 2 and 10):

> *Plastic containers serve the dual function of helping to protect and of selling the product.* With the ascendancy of the self-service department stores and supermarkets, goods are openly displayed and are expected to sell themselves. Thus the package has replaced the sales clerk. These containers are used to package nearly every good imaginable from hardware and bakery goods to electric components and dairy products. They compete against traditional packaging products, including glass bottles, metal cans, wooden pallets, paper bags, and paperboard cases, as well as against one another. In addition, the plastics are frequently combined with one another and with traditional materials by means of coatings, laminations, and coextrusions to obtain a mix of properties not available in any single material or available only at an unacceptable cost. There are a number of product areas for these containers from which plastics would be excluded were it not for the combinations of plastics with plastics or plastics with traditional materials. *Another unique feature of the products covered herein is that in and of themselves they serve no further function.* For example, after the milk within the gallon plastics container has been consumed, the container serves no purpose and is usually thrown away. Naturally, therefore, price is a critical factor in choosing plastics, other materials, or some combination thereof.

> \*     \*     \*     \*     \*     \*     \*

Bags and similar nonrigid articles which are not covered here under TSUS item 772.20 include disposable household bags such

---

[2] While not part of the legislative history of TSUS, the *Summaries* have repeatedly been consulted by the Courts as an aid in determining the scope of the Tariff provisions. See *Imperial Packaging* (supra) at 253 and the cases cited therein.

as garbage and garden bags, sandwich bags, and food bags. Also *excluded are any bags furnished "at the point of sale,"* such as drycleaning garment bags and merchandise bags which department stores furnish to customers for carrying purchases home. Clear plastics bags for produce, usually in rolls on elevated racks and perforated for easy removal, are also excluded if used in the supermarket at the point of sale. The above-described plastics bags enter under TSUS item 774.55, and also will be covered under a summary on miscellaneous rubber and plastics products. *These bags-on-a-roll are covered here under TSUS item 772.20 if intended to be used by the grower to package the produce for shipment.* (Emphasis supplied.)

The clear inference derived from review of these guidelines supports plaintiff's claim of classification under TSUS item 772.20 for the subject merchandise. The merchandise packages various products for shipment before the point of sale, protects them during transportation, and serves a marketing function at the retail stage. For these reasons, as well as the factors previously mentioned, classification under TSUS item 772.20 is proper.

General Interpretative Rule 10(c), TSUS, provides in part "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it." Where there are competing provisions, that with conditions which are more difficult to fulfill is controlling. See e.g. *F.L. Smidth & Company* v. *United States,* 56 CCPA 77, C.A.D. 958, 409 F.2d 1369 (1969). Since the parties agree TSUS item 774.55 describes the imported merchandise, and the Court has concluded the merchandise is also described by item 772.20, a determination as to which of the provisions is more specific is required. Item 774.55 is a general "basket" provision and is less specific than item 772.20. Therefore, the Court finds the classification of the subject merchandise under item 772.20 to be proper and controlling in the case at bar. Judgment will be entered accordingly.