CORAGGIO DESIGN, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 84-5-00658

(Decided February 19, 1988)

*Glad & Ferguson (Steven B. Lehat)* for plaintiff.

*Richard K. Willard,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Michael P. Maxwell)* for defendant.

## OPINION

TSOUCALAS, *Judge:* This action is before the Court to determine the appropriate classification of fabric possessing "Continental" or pre-woven hems, imported from Italy in 1981. The Customs Service classified the merchandise under item 338.30, Tariff Schedules of the United States, ("TSUS"), as modified by T.D. 68/9, as woven fabrics, of man-made fibers: Other: * * * Other * * * 13 cents per lb. plus 22.5% *ad valorem.* Plaintiff challenges Customs' finding and contends the merchandise is properly classifiable under 389.62, TSUS, as modified by Presidential Proclamation No. 4707, as articles not specially provided for, of textile materials: Other articles, not ornamented: Of man-made fibers: Other: * * * Other * * * at 25 cents per lb. plus 15% *ad valorem.*

## ISSUE

The issue to be resolved is whether the incorporation of the "Continental hem" into the fabric makes the material, as imported, more than mere fabric and a semi-finished drapery product, classifiable as an "article" in the basket provision, 389.62, TSUS; or whether the fabric is still "material" within item 338.30, TSUS, and not an "article," as addition of the hem results only in the fabric being "dedicated for use" as a drapery.

## ·TRIAL

At the trial of this action, three witnesses testified on behalf of plaintiff and one witness testified on behalf of defendant. The testimony established that plaintiff purchased the subject merchandise directly from the mill in Italy in rolls or bolts of woven drapery fabric, approximately one hundred eighteen inches wide and fifty yards long. Trial Transcript at 3, 22, 27 (hereinafter "Tr. at ——"). The "Continental hem" is part of the fabric construction. It is incorporated into, roughly, the last sixteen to twenty-four inches of the product and is constructed by infusing additional heavier yarns on the bottom portion of the roll. *Id.* at 27. The hem serves three purposes: to stop the drapery from unravelling, to provide an esthetically pleasing drapery, and to offer weight at the bottom of the drapery enabling it to hang in a straight manner. *Id.* at 28. Functionally, it replaces the conventional sewn hem present in most draperies, which is made by turning over the fabric, and sewing

weights in place. Thus, by pre-weaving the "Continental hem" at the mill, plaintiff saves significant costs, and cuts production time by up to twenty-five percent.

The material was identified by all witnesses as woven fabric. Tr. at 26, 103, 131, 165. Additionally, plaintiff purchases and sells the drapery fabric by the yard and imports it in the piece. It is uncontroverted that the inclusion of the hem renders the fabric unsuitable for any other purpose but for draperies.

## DISCUSSION

It is clear that the involved merchandise is of the type contemplated by Congress to be included within item 338.30, TSUS. The headnote to Part 3, covering 338.30, specifically refers to woven fabrics "in the piece":

> This part covers all woven fabrics in the piece, of any width and with or without fast edges * * *.

Schedule 3, Part 3, Headnote 1, TSUS.

There is no doubt that plaintiff's goods were imported "in the piece."[1] The fabric was imported in bolts, the commercial invoices and testimony established that the cloth was sold by the yard, and all of plaintiff's witnesses testified that it was impossible to determine how many draperies would be made from a particular bolt.

The subject merchandise is also "woven" fabric. The "Continental hem" is constructed by doubling the warp threads in the bottom sixteen to twenty-four inches of the fabric. It is pre-woven into the fabric by use of a second warp beam. Thicker yarn is sometimes used for the purpose of constructing the hem. Thus, the "Continental hem" is not a hem in the traditional sense since it is not a "finished edge or border, made by folding back a fabric, and sewing it down." *Fairchild's Dictionary of Home Furnishings* 222 (1974). But it functions as a hem for drapery purposes, by preventing unravelling, adding esthetic beauty and ensuring straight drapery hanging. Additionally, all witnesses at trial agreed that the "Continental hem" was composed solely of warp threads and filling threads crossing each other at right angles; therefore, it conformed with the following definition of woven fabric in the *American Society of Testing and Materials Book of ASTM Standards,* 353 (1975):

> a planar structure produced by interlacing two or more sets of yarns, fibers, rovings, or filaments where the elements pass each other essentially at right angles and one set of elements is parallel to the fabric axis.

However, plaintiff asserts that the presence of the prewoven hem makes the involved merchandise a semi-finished drapery product and not merely woven fabric since it replaces a significant production step: the making of the lower sewn hem and the insertion of weights. This production step, however, to be sufficient to remove

---

[1] Piece goods are defined as "[f]abrics woven in lengths to be sold by the yard in retail stores. May also mean all goods which are not cut." *Fairchild's Dictionary of Textiles* 455 (6th ed. 1979).

the subject merchandise from the purview of item 338.30, TSUS, must satisfy the rule of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, 113, T.D. 34138 (1914), which reads as follows:

The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.* [Emphasis added.]

The *Buss* rule requires a two prong analysis: (1) whether the addition of the hem rendered the fabric commercially unsuitable for use as anything other than a drapery; (2) whether the addition of the hem enabled the actual individual drapery to be fixed with certainty. Plaintiff must prove the fabric meets both requirements iterated in *Buss* before the product can be classified as an "article" within the basket provision, 389.62, TSUS.

The Court finds that the production step of inserting the "Continental hem" comports with the first part of the *Buss* rule in that the addition of the hem dedicates the material in question for use solely as a drapery, commercially unsuitable for any other use. The imported merchandise fails to satisfy the second requirement of *Buss,* however, since the addition of the hem does not fix the identity of an individual drapery with certainty. It is well settled that "no matter how close the importation is to the finished article or how dedicated it is to a single use, it remains a material until the identify of actual articles can be seen emerging with certainty from the undifferentiated material." *Bendix Mouldings, Inc.* v. *United States,* 73 Cust. Ct. 204, 206, C.D. 4576, 388 F. Supp. 1193, 1194–95, (1974); *see also American Import Co.* v. *United States,* 26 CCPA 72, 75, T.D. 49612 (1938); *United States* v. *The Harding Co.,* 21 CCPA 307, T.D. 46830 (1933); *Permagrain Products, Inc.* v. *United States,* 9 CIT 426, 436, 623 F. Supp. 1246, 1254 (1985).

The subject merchandise is imported in rolls or bolts; the sizes and shapes of the draperies will vary according to the orders received; and the fabric is sold by the yard. A specific drapery cannot be seen emerging from the fabric. Rather, there remain significant processing steps after importation: the drapery fabric must be cut according to specifications; side hems, crinoline, and pleats must be added; and the drapery must be folded. *See* Plaintiff's Exhibit 3.

The exact point in the processing at which material becomes a partly finished article must be determined on the basis of the circumstances of each case. *J.B. Henriques, Inc.* v. *United States,* 46 CCPA 54, 56, C.A.D. 695 (1958); *see also Avins Industrial Products*

*Co.* v. *United States,* 72 Cust. Ct. 43, 50, C.D. 4503, 376 F. Supp. 879, 885 (1974), *aff'd* 62 CCPA 83, C.A.D. 1150, 515 F.2d 782 (1975); *Sanwa Foods, Inc.* v. *United States,* 9 CIT 167, 169 (1985), *citing, United States (American Sponge & Chamois Co., Inc., Party in Interest)* v. *Nylonge Corporation,* 48 CCPA 55, C.A.D. 764 (1960). Several cases provide useful guidelines in making that determination.

In *The Harding Co.* v. *United States,* 23 CCPA 250, T.D. 48109 (1936), for example, the court held that material commercially suitable for use only for the manufacture of brake lining, imported in 100-foot rolls, not cut before importation, not marked for cutting, and not dedicated to the making of any *particular* brake lining, was "material" for the purpose of making automobile brake linings and not finished or unfinished parts of automobiles. The court determined that the material had to be something more than mere material for making brake lining; dedicating the material to use as a brake lining was not sufficient in and of itself.

In *American Import,* 26 CCPA 72, the court found 60-foot lengths of "silk fishing-leader gut" not sufficiently processed from the "material" stage to constitute an "article." All that remained in the manufacturing process after importation was "to cut the material to length and, after soaking to soften the same, tie the loops." *Id.* at 75. The mere fact that the involved merchandise was exclusively used for fishing leaders did not take it out of the "material" classification. *Id.*

In *Bendix,* 73 Cust. Ct. at 205–07, 388 F. Supp. at 1193–95, the court held that uncut wood moldings dedicated to use as picture frames but not dedicated to the making of *any particular frame* were not classifiable as unfinished frames; they were classifiable as only the material from which frames were made.

In *In Re Mills,* 56 Fed. 820 (1893), fabric in the piece was held to be improperly classified as partly made wearing apparel and was held dutiable as manufactures of cotton. The court stated that "it must at least be made up sufficiently far to enable us to identify the particular article of wearing apparel that is going to be made out of it." *Id.* at 821; *see also Terumo-America, Inc.* v. *United States,* 2 CIT 121, 124–25 (1981).

Plaintiff attempts to distinguish the above case law by relying on *Nylonge,* 48 CCPA 55, 61–63, and *Doherty-Barrow of Texas, Inc.* v. *United States,* 3 CIT 228, 235 (1982), claiming that product advancement and use are dispositive in determining whether the subject merchandise is "material" or an "article," not whether the merchandise had been cut.

However, plaintiff misinterprets the application of *Nylonge* and *Doherty-Barrow* to the instant action. In *Nylonge,* the court held that blocks of cellulose sponge material were properly classifiable as finished or partly finished sponges. The only process to which the sponges were subjected after importation was a slicing of the cellulose sponge loaves into pads of varying thickness. 48 CCPA at 62. Although this finding supports plaintiff's contention that goods need not be cut in order to be classified as "articles," the character

of the product was not altered by the cutting. The court found that the importation was advanced to such an extent as to essentially constitute the end product. *Id.* at 63. Thus, the critical question focused upon *how far* the product was advanced in the production process. *Id.* at 61. The case at bar is clearly distinguishable since completing the finished drapery required several important processing steps after importation. Additionally, the competing tariff provisions in *Nylonge* differentiated between "materials" and "finished or partly finished sponges." *See id.* at 57. The tariff provisions involved here do not make such a distinction. Whether an importation is characterized as a "material" or "article" will vary according to the statutory language of each case. *See Sanwa,* 9 CIT at 169.

The *Doherty-Barrow* court, in determining whether an imported metal was classifiable as "strips" or as "bale ties," held that the goods were bale ties even though they had not been cut. The court found that the goods had been manufactured in accordance with the specification for standard cotton baling ties, possessing the same chemical and physical qualities including width and gauge. 3 CIT at 234. Consequently, "cut to length" was not a prerequisite to classification as a bale tie under the applicable tariff provision. *Id.* The character or identity of the merchandise in issue was fixed with certainty.

Plaintiff next asserts that the present product is neither material nor an ultimate article but a discrete intermediate good as defined in *The Torrington Co.* v. *United States,* 8 CIT 150, 596 F. Supp. 1083 (1984). The articles in *Torrington,* however, were found to be "new and different articles of commerce." *Id.* at 155, 596 F. Supp. at 1087. In the process of becoming a "swaged needle blank," the name and character of certain wire changed completely. That is, the "wire" became a "swaged needle blank." *Id.* The incorporation of the "Continental hem" into the fabric on the other hand, does not transform the fabric into anything else; it is still drapery fabric. Therefore, plaintiff's reference to *Torrington,* is inapposite to the present case.

As the rule of *Buss* and its progeny make apparent, material cannot be classified as more than woven fabric when it is not processed to the point where the individual "article" is identifiable with certainty, not cut to specific lengths or marked for cutting, and not advanced to a point where significant processing steps no longer remain. The material is merely drapery fabric out of which finished draperies are made.

CONCLUSION

It is the finding of this Court that the drapery fabric is not discernible as an individual article and not significantly advanced in the manufacturing process to be more than material from which draperies are made. Thus, the Customs Service properly classified the product as a woven fabric of man-made material under item 338.30, TSUS.